THE PRESIDENT, DIRECTORS AND COMPANY OF THE MECHANICS BANK *vs.* CHARLES E. WOODWARD.

Third Judicial District, Bridgeport, April Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The original complaint was for money borrowed by the defendant through his wife as agent. After a judgment for the defendant had been reversed on appeal, the plaintiff was allowed to file a substitute complaint alleging that the defendant's wife obtained the money in controversy upon notes purporting to be signed by him, and that the defendant received and used it for his own benefit. *Held* that this was proper, as the new complaint was merely another form of stating the same transaction.

The filing of an answer, after demurrer overruled, is not a waiver of the defendant's right to appeal after final judgment from the ruling upon the demurrer. But if the proceedings subsequent to the answer, without imposing any new or improper burden upon the defendant, result in a judicial finding by which the facts alleged are supported, and their legal effect broadened by other facts not specifically alleged, but within the issue, this court is not bound, in considering the overruling of the demurrer when assigned as a reason of appeal, to disregard the finding and treat the demurrer as if it closed the case.

The defendant intrusted $1,750 to his wife to invest for six months for his benefit. Shortly after that period he received moneys from her which she said, and he believed, were the fruits of such investment, but which she in fact procured by forging the defendant's signature to notes which the plaintiff discounted in good faith, believing the wife to be acting as the authorized agent of the defendant. *Held* that while the defendant's reception of the money in ignorance of the facts was not a ratification of the loan, he nevertheless took and used the plaintiff's money without consideration, and could not avoid liability to account for it merely because he misunderstood the source from which it came; especially as his own act had contributed to make the misrepresentation seem credible, upon which the misunderstanding was founded.

VOL. LXXIV—44

A bill for dry goods bought by his wife but not, apparently, upon her credit, was presented to the defendant, who said he had no funds, and, on being told that his wife had a deposit with the plaintiff, directed her to pay it, which she did, using therefor part of the proceeds of the forged notes. *Held* that the trial court was warranted in holding the defendant liable as at common law for necessaries bought by his wife acting in his behalf.

The sum of $522, proceeds of said forged notes, was used by the wife in settling a suit against the defendant upon another and earlier note forged by her. The defendant was informed of the settlement by his wife, but was told and believed that it was made with funds received by her for him from New York investments. *Held* that the defendant was not liable for this amount, there being no ratification of his wife's act, and the settlement being for her benefit rather than for his.

Knowledge of the facts is essential to a ratification.

Argued April 11th—decided May 9th, 1902.

ACTION to recover the amount of two promissory notes purporting to have been made by the defendant, brought to the Superior Court in New Haven County where a demurrer to the complaint was overruled (*Ralph Wheeler, J.*) and the cause was afterwards tried to the court, *Thayer, J.*; facts found and judgment rendered for the plaintiff for part of its demand, and appeal by each party for alleged errors in the rulings of the court. *No error.*

*William B. Stoddard* and *Robert C. Stoddard*, for the appellant (plaintiff).

*James H. Webb*, for the appellant (defendant).

BALDWIN, J. This case was previously before us on a somewhat different complaint. *Mechanics Bank v. Woodward*, 73 Conn. 470. That now filed by way of substitution for the original one sets up that the defendant's wife obtained the money in controversy upon notes purporting to be signed by him, and that the defendant received and used it for his own benefit. There was no error in allowing such a substitution. The new complaint is merely another form of stating the same transaction on which the suit was originally founded.

It was met by a demurrer which was overruled. Whether it would have been sufficient to support the judgment, had the defendant not answered over, it is unnecessary to determine. Filing an answer after demurrer overruled does not waive the right to appeal after final judgment from the interlocutory judgment upon the demurrer. *Hunter's Appeal*, 71 Conn. 189, 198. But it does not follow that a reason of appeal of that nature is to be decided without reference to the proceedings following the answer. If these, without the imposition of any new and improper burden upon the defendant, result in a judicial finding by which the facts alleged are supported and their legal effect broadened by other facts not specifically alleged, but within the issue, this court is not to shut its eyes to the finding and consider the demurrer as if it had been the termination of the pleadings. We do not sit to try moot cases. Having now all the facts before us, we are not required to rule upon what would be the result of some of them if standing alone. Errors of law constitute no ground of reversal if they " are immaterial or such as have not injuriously affected the appellant." Public Acts of 1897, p. 892, § 15.

The finding shows that the defendant put $1,750 in his wife's hands in February, 1898, to be lent for his benefit to an acquaintance of hers, doing business in New York, on a note of the latter payable in six months, with interest. In September, 1898, she procured the discount by the plaintiff of a note for $800 purporting to bear the defendant's signature, but in fact a forgery, received a check in his favor for the proceeds, forged his indorsement upon it, and so got the money. Shortly before this he had been sued by one Hoadley on another note purporting to bear his signature, which she had forged, and in that action his real property had been attached. Of the money obtained from the plaintiff she used $522 to settle the Hoadley suit, and paid $100 to the defendant, telling him that she had received both these sums for him from her New York acquaintance, which he believed. In December, 1898, Mrs. Woodward procured the discount by the plaintiff of a note for $300 purporting to bear the de-

fendant's signature, but in fact a forgery, and the proceeds were deposited with the plaintiff to her individual credit. She at once checked out $200 and gave it to the defendant, telling him that she had just received it for him from the New York investment. This sum he used for his own benefit. He knew at this time that the $1,750 had not been lent to the person whose note he had agreed to take, but supposed that the $200 came from some other investment of his funds in New York which his wife had made.

A few days later a bill was presented to the defendant for $44.67 for dry goods purchased by his wife, and he was told by the party presenting it that his wife had a deposit in the plaintiff bank. He thereupon told his wife to pay it, and she did by a check against this deposit, which consisted of the balance of the proceeds of the $300 note.

The plaintiff discounted both notes in good faith, believing her to be acting as the authorized agent of the defendant. Since the transactions in suit, the defendant has been divorced from her.

It thus appears that Mrs. Woodward had been made her husband's agent to invest $1,750 for six months, and that not long after that period had elapsed he received from her moneys which she had wrongfully and fraudulently procured on his credit from the plaintiff, but which she told him and he believed were the fruits of her investment for him. The plaintiff's money to the amount of $344.67 has been thus traced into his hands, and the Superior Court has held him bound to refund it. It is certainly money of which he had had the use and benefit. Does his misunderstanding as to the source from which it came relieve him from a liability to account? He received it from one whom he had entrusted with funds to invest as his agent. It was in fact money which this agent had borrowed in his name, without authority, by means of a forgery. His reception of it in ignorance of the facts was no ratification of the loan. But it remains true that he has had and used money which the plaintiff gave to his agent in the belief that this agent had been authorized to receive it in his behalf.

Had the plaintiff credited the proceeds of the discounts directly to the defendant as a depositor, and had he then checked out the funds, he would have been liable to account for them, notwithstanding he might have believed that the credit was given for funds deposited by his wife from returns received by her from her New York investments made in his behalf. He would have been in fact using the plaintiff's money without giving the plaintiff any consideration. *Aldrich* v. *Chemical Nat. Bank*, 176 U. S. 618, 637. His only excuse in such case for refusing to refund it could be that he had been induced to make use of it by the misrepresentation of his own agent which led him to believe that it was his own. That is his present contention under the facts as they exist, but it was he who constituted her such an agent, and put her in a position where she might readily induce him to believe that the money was the fruits of the agency and should be credited to her, as such. If one of two innocent parties must suffer from his misunderstanding as to its source, as it was he who made it possible that the misrepresentation upon which it was founded should seem credible, it is he that must bear the loss. Nor is it really a loss. He has had the benefit of all which he has been adjudged to pay, and it does not appear that he has been in any way prejudiced with respect to his right to hold his agent to accountability for all the funds which he placed in her hands.

Under these circumstances, it is immaterial that the proceeds of the discounts now in question were not deposited in the plaintiff bank to the defendant's credit, but came into his possession through his wife, and by her forgeries and fraud. It is sufficient that these moneys of the plaintiff have been traced directly into his hands. The case stands on the same footing as if the $344 had been given to his wife in marked bills, and the same bills passed over to him by her.

The $522 which she used in settling the Hoadley suit never came into his possession. It was money of the plaintiff, fraudulently and without right obtained upon his credit by an agent who committed this default to cover up an earlier one. The note upon which that suit was brought was a forgery.

This defense he had set up. It is to be presumed that as it was just, it would have been successful. Mrs. Woodward was benefiting not him but herself by thus getting out of existence the proof of her crime. *Craft* v. *South Boston R. Co.*, 150 Mass. 207, 2 Northeastern Rep. 920. That when informed of the settlement, immediately afterwards, and at the same time told that it was made with funds received by her as his agent from her New York acquaintance, he made no objection, did not amount to a ratification; for he believed that the money was so obtained. If he could be held by the bank on that transaction, it would be because he was responsible for the act of his agent; but such a responsibility could only be rested on a ratification, and there can be no ratification without a knowledge of the facts. It is found that when his wife paid over the $522, she received from Hoadley's attorney a release of the attachment of the defendant's property, which she took home and gave to her husband, and that he filed it in the town clerk's office where the attachment had been recorded, after writing upon it, " And C. C. Woodward did not pay the note held by J. E. Hoadley." This memorandum is not necessarily inconsistent with the finding of the Superior Court that he believed it had been paid with the money which his wife had collected for him.

It is contended that the bill for the dry goods was a proper demand against Mrs. Woodward, and, if so, that the defendant derived no benefit from its payment. It is found, however, that when presented to him as a demand against him, his only reply was that he had no funds with which to meet it, and it is not found that any credit had been given to Mrs. Woodward on account of separate estate, or otherwise. The Superior Court was therefore warranted in holding him liable as at common law for a purchase of necessaries by his wife, acting in his behalf.

A certified copy of the notes taken by the court stenographer of the testimony given by a witness at the former trial of the cause, who has since gone to parts unknown, was admitted by the court, under the provision of the Public Acts of 1893, p. 503, Chap. 116, notwithstanding the objec-

tion of the defendant that the former trial was of a different cause of action. The same considerations which justified the substitution of the new complaint show that this ruling was fully within the discretion of the trial court.

There is no error on either appeal.

In this opinion the other judges concurred.