HEIMAN POLINER *vs.* ANNA FAZZINO.

First Judicial District, Hartford, October Term, 1926.
WHEELER, C. J., CURTIS, MALTBIE, HINMAN AND AVERY, Js.

Hearsay testimony, when admitted and suffered to stand without objection, becomes and remains evidence in the case subject to any infirmative suggestions due to its inherent weakness,

Poliner *v.* Fazzino.

A witness in the present case, the son of the plaintiff's predecessor in title, repeated without objection what his father had told him concerning an agreement which the defendant's predecessor in title had made with respect to a right of way across the latter's premises. *Held* that this testimony, inferentially confirmed by other facts in the case, supported the trial court's finding that the agreement in fact existed.

The same witness also testified with reference to a gate at the end of the right of way, that his father "instructed us to lock it up when we left it." *Held* that this justified the trial court's finding that this witness's family possessed a key to the gate and passed through it at will in the nighttime.

Where a right of way was used by the plaintiff's predecessors in title from 1892 until 1910 under such circumstances as to create prescriptive rights therein, those rights were not affected by the fact that after 1910 such use was discontinued until 1920 when it was resumed by the plaintiff and maintained until the commencement of the present action.

That the use of a right of way began as the result of an oral grant or agreement serves to emphasize rather than militate against its adverse character.

The nature and circumstances of a use and the situation of the parties may, as in the present case, furnish a legitimate basis for the inference that its character was adverse.

Argued October 5th—decided December 16th, 1926.

ACTION for an injunction to restrain the defendant from obstructing or interfering with an alleged right of way, brought to the Superior Court in Middlesex County and tried to the court, *Banks, J.;* judgment for the plaintiff, and appeal by the defendant. *No error.*

*Daniel J. Donahue* and *Thomas C. Flood,* for the appellant (defendant).

*Israel Poliner* and *Bertrand E. Spencer,* for the appellee (plaintiff).

HINMAN, J. The plaintiff and defendant own adjoining parcels of real estate on the easterly side of Main Street in Middletown, that of the plaintiff being northerly of that of the defendant, and both being

northerly of the lands of other proprietors extending southerly along Main Street to Ferry Street. From a time prior to 1882 an alleyway has extended northerly from Ferry Street, in the rear of various properties fronting on Main Street, to the southerly line of the land now of the defendant, and prior to 1892 Thomas Walsh, defendant's predecessor in title, had acquired, by deed, a right to use this alleyway.

The plaintiff alleged that his predecessors in title had acquired, by prescription, a right of way from land now of the plaintiff, in the rear of buildings on his land, across land now owned by the defendant to the northerly end of the alleyway, and that the defendant has obstructed this right of way by erecting a fence across it. The decision of the trial court sustained these allegations and enjoined the defendant from obstructing the right of way. A second count of the complaint alleged encroachment by the defendant's building upon land of the plaintiff. To this the defendant pleaded adverse occupation of the land involved; this issue was found in favor of the defendant, and the portion of the judgment relating thereto is not appealed from.

The first reason of appeal attacks several findings of fact as being unsupported by evidence. The first of these is that in 1892, after the establishment, by survey, monuments, and written agreement between Frank Van der Brouck and Walsh, predecessors in title, respectively, of the present parties, of the boundary line between their properties, Van der Brouck and Walsh entered into a verbal agreement whereby the former allowed an existing encroachment of the latter's building upon his land to continue, and Walsh gave Van der Brouck the right of way in question. As to this point Harry A. Van der Brouck, a son of Frank, testified that after the dispute between his father and Walsh as to the location of the boundary line had been settled by

such survey, monuments, and written agreement, Walsh agreed that Van der Brouck might have the right of way and that there was never any dispute or trouble between them after that. The appellant now claims, apparently for the first time, that this evidence was based on information given the witness by his father, now deceased, and therefore hearsay. If this be so, of course it might have been eliminated by proper motion, seasonably made, but since it was admitted and suffered to stand without objection, it became and remains "evidence in the case, subject, of course, to any infirmative suggestions due to its inherent weakness." 4 Chamberlayne on Evidence, § 2701; *State* v. *Segar*, 96 Conn. 428, 437, 114 Atl. 389; *Damon* v. *Carroll*, 163 Mass. 404, 40 N. E. 185. Inferential confirmation of the existence of such an agreement is also derived from the undisputed existence, during all of the claimed prescriptive period, of a gate in the fence between the two properties, the contemporaneous maintenance to the present time of the encroachment by Walsh, and the unrestricted use by Van der Brouck, his family, tenants, and successors, of a way across the Walsh back yard to the end of the alleyway leading to Ferry Street. It cannot be held, therefore, that the fact was found without evidence.

It is found, and it is undisputed, that a gate on the south boundary of the Walsh property, at the end of the alleyway, was customarily locked during the night and, when so locked, prevented passage over the claimed right of way, into the alleyway, except by those who were in a position to unlock the gate. The appellant seeks to eliminate the further finding that from 1892 to 1910 some members of the Van der Brouck family had a key to the gate and by means thereof they passed through at night whenever they desired, and by such corrections, and the resulting situation of a

nightly exclusive control by Walsh of passage through the gate, develop an interruption of the use by and under plaintiff's predecessors. The appellee insists that there was, in fact, definite evidence that the Van der Broucks had keys to the gate with which they passed through at will; but if so, since it does not appear in the printed record, it is of no assistance. However, the record discloses that Harry Van der Brouck did testify, regarding the gate, that his father "instructed us to lock it up when we left it"; this evidence raises a legitimate inference, sufficient to support the finding, that the family possessed means of locking and unlocking the gate, and therefore were able to use the way, at night as well as by day, when occasion arose.

The finding states that from 1910 to 1920 one Zimmerman, the owner during that period, of the premises now owned by the plaintiff, claimed no right of way across defendant's property and made no use of such a right of way. Of this, naturally, the defendant does not complain, but does attack the further finding that Morris Poliner, a tenant of Zimmerman, used it during that period. Poliner's tenancy ceased in October, 1910, and his use covered the period extending from that date back to 1900, and the finding is corrected accordingly. If the period of Zimmerman's ownership and non-user, or any portion of it, was an essential part of the claimed prescriptive period, his failure to claim and use the right of way would, of course, break the continuity which is an essential element of prescription. Here, however, the requisite period of uninterrupted use (from 1892 to 1910) is found by the trial court, from sufficient evidence, to have run before Zimmerman took title; such use was, it is further found, resumed in 1920 and continued until the commencement of this action, and Zimmerman's intervening non-user

Poliner *v.* Fazzino.

does not affect the existence of the right of way. *Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 248, 96 Atl. 944. Lacking corrections of the finding as to subordinate facts essentially affecting it, the finding that the use by and under the plaintiff's predecessor in title was continuous and uninterrupted from 1892 to 1910, must stand. The open and visible nature of the use is indubitable.

There then remains for consideration the soundness of the further finding that such use was adverse and under a claim of right. There is some express evidence to that effect. The fact that the use began as the result of the agreement stated in the finding serves to emphasize rather than militate against its adverse character; it furnishes a natural basis for, and prima facie evidence of, enjoyment under a claim of right. *Alling Realty Co.* v. *Olderman, supra,* p. 247, and cases there cited. Furthermore, adverse character may legitimately be inferred from the situation of the parties and the nature and circumstances of the use. *Shea* v. *Gavitt,* 89 Conn. 359, 363, 94 Atl. 360; *Bradley Fish Co.* v. *Dudley,* 37 Conn. 136, 147; *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 549, 95 N. E. 938; *Smith* v. *Putnam,* 62 N. H. 369, 372; *Dodge* v. *Stacy,* 39 Vt. 558, 568; Jones on Easements, §§ 185, 186. Hence the finding that the user was adverse and under a claim of right may not be disturbed.

The facts set forth in the finding are sufficient to sustain the judgment appealed from.

There is no error.

In this opinion the other judges concurred.