PUTNAM, COFFIN AND BURR, INC. *v.* STEPHEN HALPERN ET AL.

KING, C. J., COTTER, THIM, RYAN and SHEA, Js.

508

Argued October 13, 1966—decided February 15, 1967

*H. David Leventhal,* with whom was *Herbert A. Krasow,* for the appellants (defendants).

*Bradley B. Bates,* with whom was *Raymond B. Green,* for the appellee (plaintiff).

SHEA, J. Since 1913 the plaintiff and its predecessors in title have owned an office building at 6 Central Row in Hartford where they have conducted a stock brokerage business. This property is bounded on the west by a lot at the southeast corner of Main Street and Central Row on which is situated a seventeen-story bank building, known as 750–760 Main Street, owned by the defendants. A doorway through the west wall of 6 Central Row and the east wall of the bank building on the ground floor affords a passageway from one building to the other. For forty years or more, employees and customers of the plaintiff and its predecessors have walked through the lobby of the bank building and this doorway in order to enter or leave the plaintiff's premises by the bank building or by Main Street, to which the lobby leads. In 1962 the defendants purchased the building from the bank. Several months later they informed the plaintiff of their intention of terminating the use of the doorway.

The site at 750–760 Main Street was occupied by an earlier bank building, and a bridge connected the second floors of this structure and of 6 Central Row. In 1920 plans were drawn for the present bank building to replace the old one. An agreement dated November 13, 1920, was entered into which defined the boundary line between the two prop-

erties and resolved previous discrepancies. Another agreement of the same date created certain mutual restrictions on each property and also allowed several encroachments, such as sills and cornices, to project over the land of the plaintiff from the east wall of the bank building when it was constructed. The doorway in the east wall of the bank building is shown on some of the construction drawings and was included in the building as completed in 1922 or 1923. An opening in the west wall of the plaintiff's building was made to join this doorway. A swinging door was installed within the portion of the doorway on the plaintiff's land and a sliding fire door within the bank building portion. In 1945 the swinging door was reconstructed at the expense of the plaintiff so as to be operated by an electric eye from posts in the lobby of the bank building. Further renovations of the door were made in 1951.

The plaintiff was a customer of the bank, there were daily business contacts between them, and their relationship was cordial. The use of the doorway was mutually beneficial. The plaintiff has exercised control of the doorway exclusively, the door being unlocked during its business hours and locked at other times, even when the bank building was open.

No written agreement about the passageway was ever made, and the title examination made in behalf of the defendants at the time of their purchase disclosed nothing relating to it. Before the purchase, however, the defendants knew of the use being made of the doorway. The electric eye posts and the door were also visible.

The complaint, in four counts, alleged that the plaintiff had an easement to use the doorway and the lobby of the bank building as a passageway

by virtue of a grant, prescriptive right, agreement, or by necessity. The trial court rejected the count claiming an easement by necessity, but it found in favor of the plaintiff on the remainder of the complaint. The defendants were enjoined from interfering with the use of the doorway or with passage through the lobby of the bank building during the plaintiff's normal business hours so long as either building might remain standing. It was found that William H. Putnam, senior partner of the plaintiff or its predecessor, and Nathan D. Prince, president of the bank, had agreed orally to create, for the benefit of both principals, a mutual right of way between the buildings which extended through the bank building lobby to Main Street.

Testimony concerning the agreement was elicited from three witnesses, F. Norman Coles, William D. Holman, and Clarence Ambach. In each case the testimony related to conversations of the witness with Putnam, who was deceased at the time of the trial. When Coles was first questioned about the content of his conversations with Putnam, objection was made on the ground of hearsay. The court was persuaded that this testimony fell within the boundary dispute exception to the hearsay rule, and it overruled the objection. It was not claimed, nor is it now urged, that any of the statutory exceptions for admitting declarations of a deceased person are applicable. General Statutes § 52-172. The defendants excepted to this ruling and asked the court to note an objection "to this whole line of questioning," as well as an "overall exception," a request which the court granted. Coles then testified that Putnam had indicated his close relationship with the bank officers and that the door was of great value to both parties. During the course of the trial, considerable

testimony of like purport, not subject to the hearsay infirmity, was furnished. Apparently from his own observations, Coles testified, without objection and before allowance of the running objection, that there was a friendly relationship between the plaintiff and the bank and also that the doorway facilitated the transaction of business between them. Several other witnesses, without reference to any conversation, testified similarly. The ruling, therefore, was harmless. *Mirando* v. *Mirando,* 104 Conn. 318, 322, 132 A. 910; Maltbie, Conn. App. Proc. § 31.

Holman, after a general objection and exception by the defendants, said that Putnam had told him that the bank offered to provide a passageway from its building in return for being over the boundary line to a slight extent. A survey made in 1962 revealed a small encroachment by a coping of the bank building which was not mentioned in the written agreement of November 13, 1920. The plaintiff claimed that the statement attributed to Putnam referred to this encroachment.

Ambach, an employee of the plaintiff, after a general objection and exception by the defendants, also testified with respect to his conversations with Putnam. According to him, Putnam said that the door was constructed under a gentlemen's agreement, that there were no papers and that none were necessary, and that, when the door would be in operation, both parties would be so well satisfied that there never would be any objection.

Although the failure to specify the ground of objection to the testimony of Holman and Ambach would ordinarily preclude review of the rulings involved, their consideration is necessary because the trial court unfortunately allowed a running or

general objection to all testimony of this general nature. Practice Book § 226. The ground of objection was stated adequately at the time of the objection to Coles' testimony, when the running objection was permitted.

"A declaration as to boundaries between individual proprietors is hearsay, but it is one of the recognized exceptions to the hearsay rule whenever the legal conditions of its admission are present." *Turgeon* v. *Woodward,* 83 Conn. 537, 540, 78 A. 577. "The difficulty of proving private boundaries furnished the indispensable and urgent necessity for the admission of declarations of the deceased with respect to them. Many conveyances of agricultural land, and especially of woodland, do not describe the premises conveyed by courses and distances, nor even by fixed bounds. Lines cannot be run from them alone. When the private bounds are designated by landmarks, they are usually perishable in character and liable to soon disappear through decay and neglect, or in the further improvement and settlement of the country, so that the next generation has either forgotten, or never knew, them, or cannot find them." Id., 541.

The scope of the exception must reasonably be confined within the limits of the necessity from which it arose. The declarations admitted by the trial court cannot fairly be said to relate to boundaries. They pertained to the existence of an oral agreement for an easement. There was no dispute between the parties as to the location of the boundary line between their properties. The written agreements of November 13, 1920, appear to have resolved any such differences. The reference, in one of the statements attributed to Putnam, to an encroachment not contemplated by these agree-

ments might have come within the exception, if
the existence of this encroachment were at issue.
The balance of the declarations would not thereby
be rendered admissible to prove the existence of the
agreements claimed.

"Declarations as to the location of ancient bound-
aries are hearsay, and are not admissible in evi-
dence unless it appears (1) that the declarant is
dead, (2) that he would be qualified as a witness to
testify if present, and especially that he had pecu-
liar means of knowing the boundary, (3) that the
statement was made before the controversy in suit
arose, and (4) that he had no interest to misrepre-
sent the truth in making the declaration." *Mentz*
v. *Greenwich,* 118 Conn. 137, 144, 171 A. 10; *Borden*
v. *Westport,* 105 Conn. 139, 149, 134 A. 803; *Turgeon*
v. *Woodward,* 83 Conn. 537, 541, 78 A. 577. "By
'no interest to misrepresent' is meant freedom from
selfish motive or self-interest, or personal advan-
tage; disinterested not merely in the sense of hav-
ing no pecuniary interest, but in the broader sense
of being absolutely impartial and indifferent to the
controversy on trial. . . . From earliest times we
have excluded the declaration of the deceased owner
of land as to his own boundary, for the reason that
he was interested, and so the source of his title
would forbid confidence to be placed in it. . . . For
like reason, we have held similar declarations of
one from whom the claimant derives title, to be
inadmissible." *Turgeon* v. *Woodward,* supra, 542.
The finding states that Putnam "was a partner,
and later the senior partner in the plaintiff firm."
It also appears that he owned an interest in the
land at the time of executing the agreements of
November 13, 1920. At the time of his conversations
with these witnesses, which the record does not

disclose, he was interested by reason of his ownership, former ownership, or partnership. The prerequisite of disinterest on the part of the declarant was not, therefore, fulfilled. *Mentz* v. *Greenwich,* supra, 145; *Borden* v. *Westport,* supra, 150; *Turgeon* v. *Woodward,* supra, 542.

The finding of the oral agreement for a right of way is the essence of the claimed grant or agreement alleged in two counts of the complaint. The actions of the plaintiff in reliance upon this agreement, such as the installation of the doorway in its building and the later improvements made at its expense, may properly have been found sufficient to render inapplicable the Statute of Frauds. *Rutt* v. *Roche,* 138 Conn. 605, 608, 87 A.2d 805; *Rienzo* v. *Cohen,* 112 Conn. 427, 431, 152 A. 394; *Santoro* v. *Mack,* 108 Conn. 683, 691, 145 A. 273; *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 249, 137 A. 769.

The trial court also relied on the existence of this agreement in concluding that an easement by prescription had been proved. "To acquire a right of way by prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." *Andrzejczyk* v. *Advo System, Inc.,* 146 Conn. 428, 431, 151 A.2d 881; General Statutes § 47-37. Use under a claim of right means "without recognition of the rights of the owner of the servient tenement." *Zavisza* v. *Hastings,* 143 Conn. 40, 46, 118 A.2d 902; *Aksomitas* v. *South End Realty* Co., 136 Conn. 277, 281, 70 A.2d 552. "A use by express or implied permission or license cannot ripen into an easement by prescription." *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22; *Phillips* v. *Bonadies,* 105 Conn. 722, 725, 136 A. 684. Where the use depends on

authority from the owner, it involves a recognition of his right to terminate, which negates the adverse character of the use. *Phillips* v. *Bonadies,* supra, 725. An agreement creates rights and obligations between the parties. When land of another is used pursuant to an agreement, the owner has notice that the use is in the exercise of a claimed right and does not rest on his sufferance. The agreement claimed by the plaintiff, regardless of its enforceability, would furnish a natural basis for enjoyment under a claim of right. *Poliner* v. *Fazzino,* 105 Conn. 350, 355, 135 A. 289.[1] "[W]here the use began as the result of an ineffective or invalid grant, that fact does not negate its adverse character but tends rather to emphasize that it was made under a claim of right." *Klein* v. *DeRosa,* 137 Conn. 586, 589, 79 A.2d 773.

It is clear from the finding that the court, in concluding that an oral agreement for an easement had been made, relied at least in part on the erroneously admitted testimony. We cannot determine whether it would have reached the same result without this evidence. "Where . . . there is neither, on the one side, proof of an express license or permission from the landowner, nor, on the other, proof of an express claim of right by the person using the way, the character of the use, whether adverse or permissive, is left to be determined as an inference from the circumstances of the parties and the nature and character of the use." *Phillips* v. *Bonadies,* supra, 727; *Poliner* v. *Fazzino,* supra, 350. The

---

[1] In *Poliner* v. *Fazzino,* 105 Conn. 350, 353, 135 A. 289, testimony of an agreement for an easement, which had been admitted at the trial without objection, was claimed, on appeal, to be based on hearsay. The court did not consider the merits of the question but decided merely that it was being raised unseasonably.

ruling was unquestionably harmful, and, therefore, a new trial must be ordered. *State* v. *Camera,* 132 Conn. 247, 251, 43 A.2d 664; *Bosworth* v. *Bosworth,* 131 Conn. 389, 391, 40 A.2d 186; *Kovacs* v. *Szentes,* 130 Conn. 229, 232, 33 A.2d 124; *Peck* v. *Pierce,* 63 Conn. 310, 320, 28 A. 524.

We need not consider the claim of error in overruling the demurrer of the defendants. "Having now all the facts before us, we are not required to rule upon what would have been the result of some of them if standing alone." *Mechanics Bank* v. *Woodward,* 74 Conn. 689, 691, 51 A. 1084; *Scott* v. *Scott,* 83 Conn. 634, 636, 78 A. 314; *Railway Express Agency, Inc.* v. *Goodman's Express Corporation,* 129 Conn. 386, 387, 28 A.2d 869; Maltbie, Conn. App. Proc. §§ 66, 67.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.