[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR DISCHARGE OF LIS PENDENS
The plaintiffs, Richard Kelly, Jr. and Mary Kelly, have filed suit for specific performance of an alleged contract for the sale of residential real property in Greenwich and have caused a lis pendens to be filed against the real property involved in the suit. That suit has been returned to the court under docket number CV91-0115438. It appears that this application for discharge of the lis pendens was returned to court before that suit and was given its distinct docket number — CV91-0115381.
In the specific performance complaint, the plaintiffs claim that on or about February 14, 1991, they had reached an oral agreement with the defendant, William R. Ryan, for the purchase of his waterfront residential property on Cathlow Drive, Greenwich, Connecticut. The plaintiffs claim that the defendant had orally agreed to sell the property for a price of $2,125,000, in cash, subject to their securing approval from the Greenwich Inland Wetlands Agency and the Coastal Area Management Commission for certain construction on the property. The closing would be immediately after approval of the construction by those agencies. CT Page 3892
The plaintiffs claim that they orally agreed to file the application with the wetlands commission by the next filing date — February 22, 1991. Relying on the oral agreement, they arranged for an architect and engineers to do the work necessary to prepare the application and supporting data.
To this end, the plaintiffs claim that architectural plans were prepared for the proposed addition, which would double the size of the present structure as well as locating a tennis court on the property. The property was staked, a wetlands survey was undertaken, and site plans prepared. On February 21, 1991, they also secured from the defendant a letter authorizing the submission of the application to the commission by the plaintiffs' agents. The application was submitted by the February 22, 1991 deadline.
The plaintiffs, in their amended complaint, claim that on February 19, 1991, defendant's attorney submitted to their attorney a form of contract for sale, which the plaintiffs designate as a "memorial" encompassing the terms of the oral agreement. Subsequently, on February 25, 1991, the attorneys for the parties met to discuss the language of the "memorial." As a result of that meeting, the defendant's attorney revised the language of the "memorial" as agreed and submitted the revised "memorial" to plaintiffs' attorney on February 27. That evening, defendant's attorney telecopied a note to their attorney purporting to terminate negotiations and demanding a return of the contract form. This was reiterated by the defendant's attorney on the following day, when the plaintiffs claim they also learned that the defendant had contracted to sell the property to a third party.
The plaintiffs thereafter signed their copy of the "memorial" and had their attorney deliver the contract and a check for the down-payment to the defendant's attorney. The check was returned to their attorney.
The plaintiffs claim that there is an enforceable oral contract to convey the property and seek specific performance of that contract.
 I.
The burden of proof in a hearing on an application for the discharge of a lis pendens is upon the plaintiffs to establish that there is probable cause to sustain the validity of the claim.
The plaintiffs have presented evidence which establishes that their oral offer to purchase the property for $2,150,000 CT Page 3893 in cash was orally accepted by the defendant on or about February 14, 1991. The court is also satisfied that in was understood the purchase would hinge on approval by the Inland Wetlands Commission and the Coastal Management Agency of proposed construction on the property and to that end the plaintiffs would promptly submit an application. The plaintiffs have also established that the defendant forwarded a letter of authorization for the application as claimed and that architectural plans and engineering surveys and site plans were prepared to a cost to the plaintiffs of approximately $5,334.67, although, of that cost, design work to a total of $882.40 was apparently performed before the offer had been accepted by the defendant. The plaintiffs have established that the application was submitted to the boards by February 22nd date. The filing fee for that application was $400.00.
This court finds the evidence indicates that a draft contract for the sale of the property (Plaintiff's Exhibit F) was delivered by the defendant's attorney, Robert Barnum, Esq., to the plaintiffs' attorney, Tom S. Ward, Esq., on February 19, 1991. The draft contained details concerning the obligations of the parties, concerning downpayment, marketability of title, recognition of brokers, apportionment of taxes and cost, the timing of the applications to the wetlands board and the coastal management agency, and the consequences of the denial of the applications. The principal consequence of a denial of the applications, or of the granting of the applications from which an appeal was taken, or in any event, by June 1 if no action on the applications were forthcoming, was the termination of the contract of sale. Attorney Barnum also established that this draft had not been reviewed by the defendant, William Ryan.
The evidence further indicates that the draft contract was not acceptable as presented to the plaintiffs. A conference between the attorneys for the parties was held on February 25 resulting in the redrafting of the contract to include some of the items requested by the plaintiffs (Plaintiff's Exhibit G).
The changes primarily concerned giving the plaintiffs an option to purchase at the contract price, even if any of the factors causing termination of the contract in conjunction with the applications became applicable. In addition, the draft included requested representations by the seller concerning "psychological impact" under Public Act 90-141; representations that the seller would not voluntarily seek protection under Title XI of the U.S. Bankruptcy Code. This draft had not been approved by the defendant when it was delivered on February 27.
The draft did not include a liquidated damages clause which the plaintiffs' attorney indicated his clients insisted upon CT Page 3894 (Defendant's Exhibit 1). This draft was delivered to plaintiffs' attorney on February 27 with the advice that the defendant had no approved the changes. Later that day, the defendant's attorney requested the return of the draft indicating that the negotiations were terminated.
The plaintiffs infer that the defendant elected not to proceed with the sale because he had an offer of purchase at a higher price and that, indeed, he entered into a contract of sale with a third party on the following day.
Attorney Barnum testified that Mr. Ryan found a number of the requested representations to be offensive and primarily balked at the plaintiffs' insistence on a liquidated damages clause as opposed to actual damages in the event of default by the purchasers, which he found unacceptable in a declining seller's market.
In any event, the defendant never signed any of the written drafts. Mrs. Kelley signed a copy of the second draft on February 28. Mr. Kelley signed that copy on March 1. The signed contract form together with a downpayment check was forwarded to the defendant's attorney on March 5, 1991. This tender was rejected and the document and check were returned that day (Defendant's Exhibit 3)
 I.
This court has summarized the evidence presented at the hearing in some detail, since probably there would be little more presented at a trial, except for some amplification and testimony concerning any allegations that the plaintiffs were able to pay the cash purchase price. On that issue, no testimony was presented at the hearing. Based on this evidence, it is the court's opinion that the plaintiffs have not sustained their burden of probable cause.
The plaintiffs, in their brief, appear to have abandoned their claim that the draft contracts were memorializations of the oral agreement adequate to overcome the defense of the statute of limitations.
"General Statutes Sec. 52-550 provides in pertinent part: `No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (4) upon any agreement for the sale of real property . . .' . . . However plain and complete the terms of an oral contract for the sale and purchase of real estate, it cannot be enforced against a party thereto unless he, or his CT Page 3895 agent, has signed a written memorandum which recites the essential elements of the contract with reasonable certainty. Scinto v. Clericuzio, 1 Conn. App. 566, 567-68, 474 A.2d 102
(1984)
The evidence indicates that the defendant never signed, let alone approved, either of the draft contracts. Nor does the evidence indicate that the parties came to an understanding on some of the issues, especially the question of damages in the event of default by the purchasers. This was not an insignificant factor in a sale of property for $2,125,000.
It is not necessary then to consider whether there is adequate mutuality to warrant specific performance in a written contract under which the obligations of the purchaser did not inhere until the occurrence of a condition precedent involving approval by two boards of a proposed construction in coastal wetlands, since there was no written memorial signed by the defendant on which there was a meeting of the minds.
The written contract drafts were not adequate to remove any oral agreement from the effect of the statute of frauds.
 II.
The defendant claims that the oral agreement between the parties was nothing more than an understanding looking to the preparation of a contract. He cites Jaybe Construction v. Beco, Inc., 3 Conn. Cir. Ct. 406, 409 (1965) for the proposition that: "Broadly stated, preliminary negotiations as to the terms of an agreement do not constitute a contract. . . . It becomes a question of fact whether the parties intended the agreement . . . to constitute a contract or intended that there should be no contract until the execution of a formal written contract and it depends upon the intention of the parties as gathered from the language used when interpreted in the light of their attendant and surrounding circumstances."
The plaintiffs contention is that they and defendant Ryan entered into an oral agreement for the purchase and sale of the property. Ryan accepted the offer through his agent Bryce Holland, which acceptance Ryan confirmed by phone.
A contract for the sale of real estate requires "mutual obligation on . . . one party to sell [the property] and on the other to purchase [it] . . ." Cutter Development Corporation v. Peluso, 212 Conn. 107, 110, 561 A.2d 926 (1989).
Since the oral agreement included an understanding on the property to be sold, on the purchase price, on the date of CT Page 3896 closing which was to be upon approval by the wetlands agency and the coastal management agency, as well as on the one contingency relating to approvals, a valid enforceable contract was formed even though the purchase price was to be $2,125,000.
The Kellys claim that their part performance removed the oral agreement from the statute of frauds.
The plaintiffs have cited Bishop v. Bordonaro, 20 Conn. App. 58,66, 563 A.2d 1049 (1989) for the proposition that "The Statute of Frauds does not prohibit the sale of real estate pursuant to an oral contract. The effect of the statute is to create a defense to an action on an oral contract . . . It does not, however, bar the conveyance of real estate pursuant to a contract that is not in writing."
For example, "The doctrine of part performance [which removes an oral agreement from the Statute of Frauds] arose from the necessity of preventing the statute against fraud from becoming an engine of fraud." Rutt v. Roche, 138 Conn. 605,608, 87 A.2d 805 (1952) citing Harmonic Club, Inc. v. Roche,106 Conn. 243, 137 A.2d 769 (1927).
The doctrine can be summarized as follows:
 "A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds, if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."
Restatement (Second) of Contracts, Sec. 129.
The plaintiffs claim that under Connecticut law, the test of part performance has been described as follows: "First, `the conduct relied upon must be referable to and consistent with the oral agreement' . . . Second, the conduct alleged to have been induced by reliance on the oral agreement must be of such character that `repudiation of the contract by the other party would amount to the perpetration of a fraud.'" H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443, 408 A.2d 230 (1979) [Citations omitted].
Although the modern trend is not to require any particular acts in order to satisfy the first element of the test, the ". . . construction of substantial improvements on the land by the CT Page 3897 purchaser . . . has been regarded as the strongest and most unequivocal act of part performance by which an oral contract to purchase land is taken out of the Statute of Frauds." Breen v. Phelps, 186 Conn. 86, 95-96 (1982). In fact, ". . . making of valuable improvements alone in reliance on the vendor's promise has been deemed sufficient by many authorities to allow specific enforcement of the contract." Id.
The plaintiffs have cited the following cases as indicating examples of part performance:
In JB Weston Auto Park Associates v. Hartford Redevelopment Agency, et al., 15 CLT 28, p. 535 (July 17, 1981) plaintiff's allegation that it had incurred substantial "architectural fees, engineering fees, and other planning and development costs" sufficient to defeat motion to strike.
In Breen v. Phelps "labor and material towards the repair and renovation of the premises" defeats motion to strike.
Also, Rutt v. Roche, 138 Conn. 605, 609, 87 A.2d 805
(1952) (Seller, seeking to enforce a contract, alleging he allowed one store to remain vacant and gave notice of eviction to the other store was deemed sufficient to overcome demurrer); Putnam, Coffin Burr, Inc. v. Halpern, 154 Conn. 507, 515, 227 A.2d 83
(1967) (installation of doorway and other unspecified improvements in plaintiff's building as access to disputed easement); Padula v. Padula, 138 Conn. 102, 108, 82 A.2d 362
(1951) (plaintiffs living on farm. constructing new buildings, making repairs and improvements); Vigneri v. Prouty, 15 CLT 45 at page 789 (October 4, 1989) (allegations of possession, payment of consideration and making of improvements); Rienzo v. Cohen, 112 Conn. 427, 431, 152 A. 394 (1930) (possession, planting of crops, general conduct of farm); Ubysz v. DiPietro,185 Conn. 47, 54, 440 A.2d 830 (1981) (possession, maintenance and improvements).
The plaintiffs also claim that the approval contingency did not affect the Kellys' and Ryan's mutuality of obligation necessary to form the contract. Citing, North v. North,183 Conn. 35, 438 A.2d 807 (1981) (mortgage contingency does not affect validity of the contract); Grenier v. Compratt Construction Co., 189 Conn. 144, 454 A.2d 1289 (1983) (parties free to impose conditions on contractual liability); and, William Poe and Richard Weicz v. Ansonia/Derby Water Co., 16 CLT 44 page 842 (November 5, 1990) (contract to purchase real estate contingent on environmental agencies' approvals). Although it should be noted that this case did not present the same issue as the present case, since the party against whom the specific performance was sought was the party which had to CT Page 3898 secure the approvals; so the relief seems to be in the nature of a mandatory injunction.
The cases cited by the plaintiffs involve, in the main, issues demurrers or motions to strike where the question is the adequacy of the pleadings to survive the motion, not whether the evidence establishes probable cause that specific performance of an oral contract will in fact be granted because of partial performance.
Here, the plaintiffs claim that the evidence shows part performance by them in authorizing engineers, soil scientists land attorneys to draft and file applications with the boards after Ryan had given written consent for them to make the applications. The plaintiffs also claim they made substantial improvements to the property in staking the wetlands and boundary lines and preparing site plans, all consistent with the oral agreement. The plaintiffs claims falter on the requirement clearly expressed in the very cases cited by the plaintiffs that the partial performance must be substantial. For example, in J.B. Weston Auto Park Associates, supra, the substantial fees expended exceeded $250,000. The other cases involved physical constructions or improvements to the land or buildings.
Here, the plaintiffs claim the expenditure of $5,000.00 for design and engineering work. The only physical change made to the property appears to be the installation of stakes.
These expenditures and "improvements" appear insubstantial for the proposed purchase of property for a price of $2,150,000.00. Moreover, that these relatively modest funds were expended in reliance on the letter of authorization signed by the defendant Ryan does not preclude the plaintiffs from seeking restitution.
Where a party has restitution available to him for funds expended, such as payment of the purchase price under an oral contract, his predicament does not warrant the application of an equitable doctrine, specific performance, designed to prevent the statute of frauds itself from becoming an engine of fraud Breen v. Phelps, 186 Conn. 86, 94-95, 439 A.2d 1066 (1982).
On the other hand, "[t]he construction of substantial improvements on the land by the purchaser, however, has been regarded as the strongest and most unequivocal act of part performance by which an oral contract to purchase land is taken out of the statute of frauds. . . . The making of valuable improvements alone on reliance of the vendor's promise has been deemed sufficient by many authorities to allow specific enforcement of the contract. . . . Our cases also have given the CT Page 3899 making of improvements a special significance as an act of part performance. See Putnam, Coffin Burr, Inc. v. Halpern,154 Conn. 507, 515, 227 A.2d 83 (1967); Padula v. Padula, 138 Conn. 102,108, 82 A.2d 362 (1951); Rienzo v. Cohen, 112 Conn. 427,431, 152 A.2d 394 (1930)." Breen, supra, at 95.
The Breen case involved a motion to strike which the trial court granted and which action the Supreme Court reversed, saying: "The allegation of furnishing `labor and material toward the repair and renovation of the premises' may be construed as a claim of substantial improvements which alone might support the maintenance of the action. 1 Restatement, Contracts Sec. 197. It is not evident from the complaint that restitution would be available to the plaintiff or would provide an adequate remedy to relieve him from the substantial detriment he claims to have suffered in reliance upon his agreement with the decedent." Id. at 96-97. [Emphasis supplied].
Here, however, the evidence of the claimed part performance has been fully presented. It is evident both that the alleged improvements to the property only consisted of staking the lot and that the detriment consisted of incurring expenses for architectural and engineering work of approximately $5,000.00 which can be remedied by restitution or damages.
Our Supreme Court has stated: "Furthermore, even assuming that the trial court had determined that the parties had an agreement, the plaintiff could not prevail because the court also found that the acts undertaken by the plaintiff prior to the initiation of this action were not sufficiently substantial to satisfy the part performance exception to the statutes of frauds." See Breen v. Phelps, 186 Conn. 86, 95, 439 A.2d 1066
(1982)." Dunham v. Dunham, 204 Conn. 303, 315, 528 A.2d 1123
(1987).
Because the acts undertaken by the plaintiffs were not sufficiently substantial to satisfy the part performance exception to the statutes of frauds, this court finds the plaintiffs have not sustained their burden of probable cause.
The defendant's application for discharge of the lis pendens is granted.
NIGRO, J.