[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this court by writ, summons and complaint dated February 10, 1993, and returnable March 9, 1993, as of record more clearly appears.
The complaint contained four counts.
The first count claimed trespass, the erection of a fence on plaintiffs' property and the placing of steel rods, all to the denial of the plaintiffs' full use and enjoyment of their property.
The second count claimed that the steel rods placed by the defendant created a dangerous condition and constituted a nuisance.
The third count indicated that the defendant claimed an estate or interest in the premises adverse to the title and interests of the plaintiffs.
The fourth count claimed that the common boundary of the plaintiffs and the defendant is uncertain and that the parties are unable to agree on the location of such boundary and requests the appointment of a Committee pursuant to the provisions of C.G.S. § 47-34. CT Page 5496-H
In their prayer for relief, the plaintiffs' claimed:
1. money damages;
 2. a determination of the rights of the parties in certain described tracts;
3. temporary and permanent injunction;
 4. an order allowing removal of the fence and steel rods;
5. appointment of a Committee; and
6. such other relief as may be required.
The defendant appeared by counsel on March 9, 1993. The defendant filed an answer, special defenses and counterclaim on May 10, 1993.
In the special defenses, the defendant claimed that plaintiffs' grantor did not own the land in question at the time of conveyance to plaintiffs, and that the steel rods driven in by the defendant, or her surveyor, were an unlawful determination of the boundary.
The defendant's counterclaim claimed trespass and denial of full use and peaceful possession of defendant's premises in the first count of the counterclaim; in the second count, adverse possession; in the third count, the request for the appointment of a Committee pursuant to C.G.S. § 47-34; and, in the fourth count, conversion of certain shrubs and bushes.
A reply to the special defenses and an answer to the counterclaim was filed by the plaintiff on October 4, 1993, closing the pleadings.
On April 25, 1995, the defendant withdrew the third count of the counterclaim.
The matter was heard by the court on June 12, 1996 and June 17, 1996 to a conclusion.
The court makes the following findings of fact. CT Page 5496-I
The plaintiffs Walter and Lois Goodrich are husband and wife and reside at 23 Occum lane, Montville, Connecticut where they have lived with their family since 1963.
The defendant Roberta Diodato resides at 31 Occum Lane, Montville, Connecticut, where she has lived with her family since 1961.
The Goodrich property and the Diodato property are part of a residential subdivision developed by John and Frank Lathrop on Occum Lane, Montville.
The Lathrop subdivision is depicted on two maps, each prepared by George E. Pitcher Son, one dated September, 1959 and the other December 28, 1959, and each is on file in the Montville Land Records. (Exhibit 20.)
By warranty deed dated May 2, 1961, the Lathrops' conveyed Lot No. 3 and the easterly one-half of Lot No. 2 of their subdivision to Augustine Diodato, Jr. (now deceased) and the defendant, Roberta Diodato. (Exhibit 23, Plan of Building Lots for Lathrop Brothers.
By warranty deed dated September 20, 1962, the Lathrops conveyed Lot No. 1 and the westerly 20 feet of Lot No. 2 of this same subdivision to the plaintiffs, Walter and Lois Goodrich. (Exhibit 11.)
By quitclaim deed dated September 26, 1980, the Lathrops conveyed their remaining portion of Lot No. 2 to the plaintiffs, Walter and Lois Goodrich. (Exhibit 12.)
At the time Mr. and Mrs. Goodrich purchased Lot No. 1 and the westerly 20 feet of Lot No. 2, that property and the property owned by the Lathrops abutting on the east were overgrown with trees, wild bushes and brush and contained no physical characteristics which marked the boundary line with the property owned by Diodato.
In 1989, a dispute arose as to the location of the common boundary line separating the properties of the parties to this action. Prior to that time, the Diodato and Goodrich families were very friendly, good neighbors, often socialized with one another and their children played together. CT Page 5496-J
The dispute in 1989 centered at first on the location of the Diodato shed; it being Mr. Goodrich's opinion that the shed was located on or partially on his property and he so notified Mrs. Diodato by letter and recorded the letter in the Montville Land Records. (Exhibit 18.)
In response, Mrs. Diodato engaged a surveyor, John Wells, to make a survey of her property. In the course of making the survey, Wells drove survey stakes in the ground along the boundary line as determined by him. A portion of each stake protruded above the ground.
Mrs. Diodato erected a fence along a portion of the boundary line located by her surveyor.
In response, Mr. and Mrs. Goodrich also engaged a surveyor, Robert Mullen, to make a survey of their property.
Robert Mullen is a registered land surveyor and has been so engaged since 1982. Mullen first did survey work for Goodrich in 1990. Incident to this work, Mullen searched the land records and examined the assessor's records. Mullen studied maps done by George Pitcher and noted certain errors therein. The December and September maps done by Pitcher in 1959 fail to indicate that they were prepared by a registered land surveyor.
When Goodrich purchased Lot No. 1 and a portion of Lot No. 2 in 1962, a goodly portion of Lot No. 2 was a swamp.
Shortly before Goodrich purchased the strip of land described in the Montville Land Records, Vol. 143 p. 488, on September 26, 1980, his grantor Lathrop had offered the parcel to both Goodrich and Diodato because Lathrop didn't want to pay taxes on the land anymore. Goodrich purchased the same.
Goodrich received separate tax rate bills for the two separate parcels purchased from Lathrop. (Plaintiffs' Exhibit 16.)
The assessor of the Town of Montville shows two separate contiguous parcels on their property assessment cards. (Plaintiffs' Exhibit 13 14.) CT Page 5496-K
Mr. John P. Wells is a registered land surveyor and has been since 1984. Wells examined the land records. Wells gave no weight to the conveyance of Lathrop to Goodrich in Vol. 143 p. 488, and in effect treated it as a nullity because it was a quit claim deed.
Wells admitted being uncertain as to the location of the boundary line between the parties, and Wells never conferred with Goodrich or Lathrop.
Mr. Frank W. Lathrop of Montville is one of the Lathrop Brothers referred to in the deed to Goodrich, and one of the grantors along with his brother John B. Lathrop. (Exhibits 11 12.)
Lathrop Brothers built the Diodato home and the Goodrich home and laid out and installed the respective driveways. Lathrop Brothers subsequently rebuilt and resurfaced the Diodato driveway. Lathrop relied on the Pitcher survey.
Steven J. Diodato is the son of Roberta Diodato, and has resided on the Diodato premises for 27 years. He is an engineer and employed by Underwater Sound Laboratories. He recalled trimming bushes and shrubs between the two properties, recalled parties and picnics.
Roberta A. Diodato purchased property along with her late spouse, Augustine Diodato, in 1961. Augustine Diodato passed away in 1987. Roberta Diodato and her late spouse never discussed any boundary line problems or disputes in Augustine's lifetime.
DISCUSSION
The plaintiff and the defendant own adjoining parcels of land in Montville. The plaintiffs' property is situated west of the defendant's parcel. These parcels are part of a residential subdivision owned and developed by John and Frank Lathrop on Occum Lane. This subdivision is depicted on two maps each of which was prepared for the Lathrop brothers by George Pitcher Son; one dated September, 1959 and the other December 28, 1959. Both maps are on file in the Montville Land Records. (Exhibits 10 and 20.)
The defendant and her late husband, Augustine, acquired CT Page 5496-L title to Lot No. 3 and the easterly one-half of Lot No. 2 of the Lathrops subdivision by warranty deed from the Lathrops dated May 2, 1961. (Exhibit No. 23.) The Lathrops owned the westerly one-half of Lot No. 2.
The plaintiffs' acquired title to Lot No. 1 and the westerly 20 feet of Lot No. 2 in the same subdivision by warranty deed from the Lathrops dated September 20, 1962. (Exhibit 11.) That portion of Lot No. 2 situated between the easterly one-half of that parcel which was conveyed to the defendant and the westerly 20 feet of that parcel, which was included in the conveyance to the plaintiffs, remained in the ownership of the Lathrops. It is this remaining portion of Lot No. 2 which is at the center of this dispute.
By quitclaim deed dated September 26, 1980, John and Frank Lathrop conveyed all of their remaining interests in Lot No. 2 to the plaintiffs (Exhibit 12), which parcel was described as follows: "EASTERLY: By land now or formerly ofAugustine Diodato Jr. and Roberta Diodato, . . . WESTERLY: By land now or formerly of Walter R. Goodrich and Lois A.Goodrich . . ." As a consequence of this conveyance, the plaintiffs became the owners of record of the entire westerly one-half of Lot No. 2 and the defendant owned the other one-half.
In support of their claim of record ownership of their property, consisting of Lot No. 1 and the westerly one-half of Lot No. 2, the plaintiffs introduced into evidence a series of conveyances (Exhibits 1 through 12), records of the Montville Assessor (Exhibits 13 14), and tax rate bills from the Montville Tax Collector (Exhibit 16). See Curtin v.Franchetti, 156 Conn. 387. This claim of record ownership was not challenged by the defendant.
To establish what they believe to be the common boundary shared by the parties, the plaintiffs offered the testimony of Robert Mullen, a licensed land surveyor, who surveyed and prepared a map of the plaintiffs' property.
In making his survey, Mullen testified that he researched the records on file in the Montville Town Hall; that he carefully examined the plans made by George E. Pitcher Son, compared the two plans and prepared a drawing to highlight the significant differences in these plans; that he studied the deed of both parties' parcels as well as the deeds of the other owners of lots CT Page 5496-M in the Lathrop subdivision; that he reviewed state highway maps, worked in the field to locate physical evidence, surveying pins and other monumentation referred to in the various deeds; and surveyed the area from each end of the subdivision. By comparing various descriptions encountered with the existing maps and indicia of location in the field, Mullen was able to piece this information together and arrive at the location of what he believed to be the common boundary line. (Exhibit 22.) Mullen readily admitted the problems and conflicting information contained in the deeds, maps and field work, but in keeping with recognized surveying techniques, he was able to make appropriate adjustments by apportioning the discrepancies found among all of the lot owners in this subdivision so as to locate the common boundary line.
Mr. Goodrich testified that he believed that he and his wife owned the property as surveyed by Robert Mullen and that over the years he had had conversations with Mr. Diodato about their respective property lines during which Mr. Diodato expressed uncertainly as to the location or the extent of his westerly line.
Mr. Goodrich recalled that in 1989 he had lost his job and feared that he might have to sell his home. He began to prepare his property for sale and to clear the land acquired from the Lathrops in 1980. In clearing the land, Mr. Goodrich realized that the defendant's shed was on his property. He notified the defendant in writing if this situation and recorded a copy of his letter in the Montville land records. (Exhibit 18.) The shed was removed and the defendant retained a surveyor to locate her boundary lines.
In support of her special defenses and counterclaim, Mrs. Diodato testified that her claim of adverse possession commenced at about the time the Lathrops were constructing her home. She understood that her boundary line on the west extended from the edge of her driveway straight back to the stone wall which marked the rear boundary of her property. The defendant testified that she and her husband planted privet hedges along a portion of her westerly boundary near the stone wall. The hedges were maintained by them on a semi-annual basis as were other plantings of theirs which were also placed in the location of this boundary.
In further support of her claim for adverse possession, the defendant presented the testimony of John Wells, a licensed land CT Page 5496-N surveyor. In some respects, Wells' work preparatory to determining the defendant's boundary lines was similar to that undertaken by Mullen. In other respects, it was markedly different.
Like Mullen, Wells found numerous problems with the Pitcher plans, the parties' deeds and other deeds which he reviewed and made notations to that effect on his plan. Unlike Mullen, Wells selected that information most helpful to his client's position and made no adjustment for the obvious discrepancies which he noted. Wells admitted that he totally ignored the 1980 quitclaim conveyance by the Lathrops (Exhibit 12) because he was not able to fit the description set forth in that deed with the other information he had found acceptable and because a quitclaim and not a warranty deed had been used.
The plaintiffs have demonstrated by a preponderance of the evidence that they are the record owners of Lot No. 1 and the westerly one-half of Lot No. 2. By asserting a claim of ownership by adverse possession to a portion of the westerly one-half of Lot No. 2, the defendant has admitted that record title to the area in question is in another.
The defendant, having asserted a claim by adverse possession, has the burden of proof on that issue. Whitney v. Turmel,180 Conn. 147. A claim of adverse possession requires a higher burden of proof than that required of the plaintiffs. Woycik v. Woycik,13 Conn. App. 518. While the plaintiffs must prove their case by a preponderance of the evidence, the defendant must establish her claim of adverse possession by clear and positive proof which is often described as clear and convincing evidence. Clark v. Drska,1 Conn. App. 481 and Sands Associates v. Rios, 6 Conn. App. 84.
While the plaintiffs' surveyor found the common boundary line to pass through the defendant's driveway, the plaintiffs acknowledge the uninterrupted use of the driveway by the defendant and waive any claim to it.
The testimony and exhibits do not support the proposition that the defendant and her family made an open, notorious and hostile use of the land to the immediate west of the boundary line fixed by Mullen so as to put them or anyone else on notice that a claim to title by adverse possession was being asserted.Robinson v. Myers, 156 Conn. 510. There was no evidence introduced that clearly and convincingly established that the CT Page 5496-O Lathrops and/or the plaintiffs were put on notice as to the extent of the defendant's claim. Fogg v. Wakelee,40 Conn. Sup. 272.
The evidence does not support that defendant had exclusive dominion over the property in question. Mr. Goodrich worked in this area and was never told he was trespassing or on the defendant's property; a pathway was cleared and kept cleared for use by the parties and family members; and Mr. Diodato made statements to Mr. Goodrich which predated the controversy and are in conflict with defendant's claim, Putnam, Coffin Burr, Inc.v. Halpern, 154 Conn. 507; which all point to something other than exclusive possession.
The court has endeavored to carefully review the exhibits which include the deeds and various maps.
A careful plotting out of the parcels in question based on the maps and allowing for discrepancies satisfies the court that the September 26, 1980 deed Lathrop to Goodrich in fact did convey a narrow strip of land and was not as Surveyor Wells proposes a nullity.
The records of the assessor and the tax collector bear this out and support Surveyor Mullen's map. (Plaintiffs' Exhibit 22.)
The court finds that the boundary line between the Goodrich premises and the Diodato premises is as depicted in Plaintiffs' Exhibit 22 and is marked in a heavy green line with a notation on the map with two arrows indicating "Common Boundary."
Inasmuch as the green marking pencil used by the Surveyor Mullen at trial tends to obscure the line the court directs that a proper linen or mylar print of the map with the proper course line and distance thereon be prepared and recorded with the Montville Town Clerk.
The plaintiffs acknowledge the long use of Diodato as to the driveway and make no claim to that small sliver of land and the map shall reflect the same.
Judgment shall enter in favor of the plaintiffs as follows.
The court finds no intentional trespass by either plaintiffs or defendant. CT Page 5496-P
Any steel rods placed by the defendant's surveyor shall be promptly removed in a safe manner.
Defendants have not sustained their burden of proving adverse possession.
After a full hearing, the court has defined the boundary line based on the evidence.
Judgment for the plaintiffs on the complaint.
Judgment in favor of Goodrich on the defendant's counterclaim.
Austin, J.