## KLAR CREST REALTY, INC. *v.* RAJON REALTY CORPORATION ET AL.
### (10530)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued March 8—decision released May 24, 1983

*William F. Gallagher,* with whom, on the brief, were *Leonard J. Powers,* and *Elizabeth A. Dorsey,* for the appellants-appellees (named defendant et al.).

*Nancy Conaway-Raczka,* with whom, on the brief, were *Joseph E. Milardo, Jr.,* and *Ivar A. Jozus,* for the appellee-appellant (plaintiff).

SHEA, J. In this action the plaintiff sought damages and an injunction against the defendants for interfering with its use of a pent road in East Haddam which crossed the land of the defendant Rajon Realty Corporation and provided access to thirty-three acres of land owned by the plaintiff, referred to by the parties as the Mount Tom lot. The individual defendant Raymond Schmitt was the owner of Rajon Realty Corporation. The trial court, on the basis of the answers given by the jury to two interrogatories submitted to them and their verdict for damages of one dollar, rendered judgment awarding such damages to the plaintiff and enjoining the defendants from interfering with its use of the pent road. The defendants have appealed, raising three claims of error: (1) that there was insufficient evidence to establish the elements necessary to find an easement by prescription; (2) that, although the jury failed to determine the bounds of the prescriptive easement, the court, nevertheless, did so; and (3) that the verdict was inconsistent because the jury found against both defendants on a count directed against only one of them. The plaintiff filed a cross appeal because the jury failed to find in its favor upon an alternative ground. We find no error on the appeal and, therefore, find it unnecessary to consider the issues raised by the cross appeal.[1]

There is no significant dispute about the facts which the jury could reasonably have found from the evidence. The title of the land owned by the corporate defendant, which is crossed by the pent road, was traced back to Caleb Chapman, who conveyed it to Timothy Chapman on October 12, 1773, with a reservation of a pent highway laid out upon the property. A pent highway is a road which is blocked or fenced at its terminal

---

[1] During argument the plaintiff conceded that, if no error should be found on the appeal, the cross appeal need not be decided.

points. Several deeds in the chain of title refer to the pent highway. In 1935, one of the predecessors in title, Elsie Johnson, conveyed to Yetta Klar, the mother of the officers of the plaintiff corporation and the owner at that time of the Mount Tom lot, a right of way over the pent highway. Apparently the purpose of this grant was to enable Yetta Klar to obtain a mortgage loan to be secured by the Mount Tom lot as well as by other land which she held. Twenty days after acquiring the right of way she executed such a mortgage, which refers to the right of way received from Elsie Johnson. In 1932, however, Elsie Johnson had transferred to the Neptune Twine and Cord Company the southerly portion of the land crossed by the pent road, and her grant of a right of way, therefore, was effective only for the portion of the pent road which crossed the land she retained, the northerly piece.[2] The defendant corporation has acquired both these parcels of land.

The pent road extends westerly for a distance of about a half mile, from a public highway in East Haddam, Johnsonville Road, where it is fenced by a gate, to a brook, and it bounds the Mount Tom lot owned by the plaintiff on the east. The road is unpaved but its course is readily discernible. Several witnesses who had lived in East Haddam testified that they had used the road at various times over a period of more than fifty years, sometimes with and sometimes without permission of the landowners, for various recreational purposes, such as fishing in the brook to which it led, hiking and hunting. David Klar, president of the plaintiff corporation, testified that he and other members of his family had used the road since 1933, when the Mount Tom lot was purchased and was used in conjunction with the opera-

---

[2] It is not clear from the record available to us whether the pent road was located entirely on the southerly piece of land conveyed to the Neptune Twine and Cord Company.

tion of a dairy farm by the Klar family. Cows were grazed on the Mount Tom lot from 1933 to 1949 and the road was frequently traveled in attending to these animals. During the 1940's the family used the road to haul wood from the Mount Tom lot in a truck. At some time during the 1950's a lock was placed on the gate by the owners of the northerly piece of land, which was later acquired from the estate of Mary Dougherty. Mr. Dougherty, who had chained the gate, told David Klar that he could obtain the key at any time. David Klar, however, never requested the key and ceased using the gate. He continued, however, to use the pent road by going through a narrow opening on the right side. His use of the pent road was mainly on foot after the gate became locked. By this time the Mount Tom lot was being used only for recreational purposes. On two occasions, once in 1949 and once in the 1950's, he broke the chain on the gate and drove a vehicle on the pent road. About ten years before trial the individual defendant, Raymond Schmitt, had bulldozed the lower portion of the pent road and had rendered it impassable by vehicle.

The jury answered the two interrogatories which were submitted to them as follows: "(1) Did Klar Crest Realty, Inc. or its predecessors in title acquire a right to use the so called pentway by deed or, conveyance, or reservation? No. (2) Did the plaintiff Klar Crest Realty, Inc. and its predecessors in title make an open and visible use of the pathway under a claim of right continuously and without interruption for a period of fifteen years? Yes." The jury rendered a verdict for one dollar against both defendants.

In claiming a deficiency in the evidence supporting the finding of a prescriptive easement in accordance

with General Statutes § 47-37,[3] the defendants focus entirely upon the requirement that the use be under a "claim of right" in order to satisfy the statute. "To acquire a right of way by prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." *Andrzejczyk* v. *Advo System, Inc.,* 146 Conn. 428, 431, 151 A.2d 881 (1959). There can be no claim of right unless the use is without recognition of the rights of the owner of the servient tenement. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 515, 227 A.2 83 (1967). "A use by express or implied permission or license cannot ripen into an easement by prescription." (Citations omitted.) *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22 (1936). "Where the use depends on authority from the owner, it involves a recognition of his right to terminate, which negates the adverse character of the use." (Citation omitted.) *Putnam, Coffin & Burr, Inc.* v. *Halpern,* supra, 515–16.

The defendants claim that the testimony that numerous residents of the area used the pent highway creates an inference that the public had implied permission to do so and that the use of the road by members of the Klar family was indistinguishable from that of the public. "Where the use of a right of way is in common with the public, that common use is regarded as negating a presumption of grant to any individual use. In such a case the individual user must, in order to establish an independent prescriptive right, perform some act to the knowledge of the servient owner clearly indicating his individual claim of right."

---

[3] "[General Statutes] Sec. 47-37. WHEN ACQUIRED BY ADVERSE USE. No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

*Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 464, 338 A.2d 470 (1973); *Missionary Society* v. *Coutu,* 134 Conn. 576, 582, 59 A.2d 732 (1948).

We are satisfied from our review of the evidence that the trier of fact could reasonably find that the use of the pent road made by members of the Klar family was sufficiently distinct from that of the general public to indicate a claim of right. Their use was not simply for recreational purposes, like that of others who testified, but from 1933 to 1949 it was in conjunction with their operation of a dairy farm which utilized the Mount Tom lot for grazing. Thereafter, they continued to use the road for access to their property from Johnsonville Road. Most significantly, the grant of a right of way was obtained from Elsie Johnson purporting to give Yetta Klar a right to use the road for its entire length, and she, in turn, included this means of access to the Mount Tom lot in a mortgage deed which she executed containing the usual covenants of seisin and right to convey. Although this grant may have been ineffective with respect to any portion of the road located upon the southerly piece, which Elsie Johnson had previously transferred, it does indicate that the use of the road by the Klar family was under a claim of right. "[W]here the use began as the result of an ineffective or invalid grant, that fact does not negate its adverse character but tends rather to emphasize that it was made under a claim of right." *Klein* v. *DeRosa,* 137 Conn. 586, 589, 79 A.2d 773 (1951); *Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 247, 96 A. 944 (1916). We have frequently recognized the significance of an ineffective grant or unenforceable agreement as a basis for establishing the adverse character of use or possession. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* surpa, 516; *Poliner* v. *Fazzino,* 105 Conn. 350, 355, 135 A. 289 (1926); see also *Ruick* v. *Twarkins,* 171 Conn. 149, 157–58, 367 A.2d

1380 (1976) (void probate decree). We conclude that there was sufficient evidence to support the finding of an easement by prescription.

The claim of the defendant that the failure of the jury to determine the boundaries of the easement invalidates their verdict overlooks the nature of the proceeding before the court. The plaintiff filed a general claim for a jury trial. The complaint, however, sought not only damages but also injunctive relief. Therefore, both legal and equitable issues were presented. In accordance with Practice Book § 308,[4] the legal issue of damages was submitted to the jury. The court also exercised its authority under Practice Book § 307[5] to order certain issues of fact in an action demanding equitable relief to be tried to the jury. The interrogatories given to the jury encompassed only the issue of the right to use the pent road and not its dimensions. We are not aware

---

[4] "[Practice Book] Sec. 308. CASES PRESENTING BOTH LEGAL AND EQUITABLE ISSUES

"'A case presenting issues both in equity and law may be claimed for the jury list, but, unless the court otherwise orders, only the issues at law shall be assigned for trial by the jury. Whenever such an action has been placed upon the docket as a jury case, no determination of the equitable issues raised by the pleadings shall prevent a jury trial of the claim for damages, unless both parties agree in writing to waive a jury, or unless the determination of the equitable issues has necessarily adjudicated all the facts upon which the claim for damages rests."

[5] "[Practice Book] Sec. 307. ORDER BY COURT FOR JURY TRIAL OF EQUITABLE ISSUES

"No equitable issues shall be tried to the jury except upon order of the court. Upon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury, and such application shall be deemed to be a request for a jury of six."

The plaintiff had requested ten interrogatories for submission to the jury which the court revised into the two questions actually determined. Since neither party sought a separate determination by the court of those factual issues, we regard this request as an application under Practice Book § 307 for the trial of these issues of fact by the jury rather than simply a request for interrogatories to clarify the basis for the verdict of the jury on the issue of damages. See Practice Book § 307.

of any request for the submission of any additional questions to the jury. See Practice Book §§ 307, 312.

Since the trial court had reserved for itself the decision of all equitable issues involved in the case except those resolved by the interrogatories, it did not exceed its authority in finding that the right of way was approximately twelve feet wide throughout its length.[6]

The defendants also claim that there was insufficient evidence to enable the trier to determine the boundaries of the easement. "A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty." (Citations omitted.) *Kaiko* v. *Dolinger,* 184 Conn. 509, 511, 440 A.2d 198 (1981). An aerial map prepared for the town assessor showed the course of the pent road. Photographs of various sections of the road were introduced in evidence. Witnesses gave various estimates of its width, ranging from four to thirty feet. There was a sufficient basis in the evidence for the finding made by the court concerning the width of the easement.

The final claim of the defendant arises from the circumstance that the second count of the complaint, which alleged a right to a prescriptive easement as found by the jury, was addressed to the corporate defendant only. The first count, which relied upon a grant as the basis for the easement, was directed at both defendants.

Since the answer of the jury to the first interrogatory negated the existence of such a grant as claimed in the first count, their verdict for nominal damages against

---

[6] This finding is contained in a memorandum of decision entitled "Judgment," which was dated November 26, 1980, and was filed after the rendition of the jury verdict on October 7, 1980. This memorandum was not included in the printed record, which contains a judgment file prepared by the clerk omitting the finding of the width of the easement.

both defendants appears to be inconsistent with their responses to the interrogatories. That inconsistency pertains, however, only to the individual defendant and is of no avail to the corporate defendant. "We have sustained verdicts where they were incorrect as to form or contained irrelevant material but clearly manifested the intent of the jury." *Ferris* v. *Hotel Pick Arms, Inc.,* 147 Conn. 72, 75, 157 A.2d 106 (1959); *Kilduff* v. *Kalinowski,* 136 Conn. 405, 409–10, 71 A.2d 593 (1950). It is clear that the response of the jury which found an easement by prescription entitled the plaintiff to prevail upon the second count against the corporate defendant and that its verdict against that defendant was wholly consistent therewith. It is equally clear that the answer to the first interrogatory that no grant of an easement had been proved resolved the first count in favor of both defendants. Since liability of the individual defendant was asserted only in that count, the verdict against him was unwarranted. Although we would not ordinarily be concerned with the nominal damage award; *Patalano* v. *Chabot,* 139 Conn. 356, 362, 94 A.2d 15 (1952); the trial court on the basis of this verdict enjoined the individual as well as the corporate defendant from interfering with the plaintiff's use of the pent road. It is fundamental that an injunction may not be issued without first establishing that illegal acts have been performed or threatened by the party to be enjoined. It is necessary, therefore, to modify the judgment to correspond with the finding of the jury that the individual defendant was entitled to prevail on the only count addressed to him.

There is no error in the judgment against the corporate defendant; there is error in the judgment against the defendant Raymond Schmitt; that judgment is set aside and the case is remanded to the trial court with direction to enter judgment in his favor.

In this opinion the other judges concurred.