[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are residents or owners of property on Kingfisher Lane in Westbrook. All of the CT Page 1555 original plaintiffs own property on Kingfisher Lane. Carrie McKenna was added as a plaintiff at the time of trial. Carrie McKenna does not presently own property on Kingfisher Lane but her husband does own property and resides on Kingfisher Lane and he is one of the original plaintiffs; and, she lives with him.
Kingfisher Lane runs southerly from the Boston Post Road to approximately 350 feet from the shore and then turns easterly running along the northerly boundaries of properties fronting on the shore.
The defendants acquired property known as 137 Kingfisher Lane in September, 1983. The defendants' property has frontage on Long Island Sound.
The access to the defendants' property is a private 24-foot right-of-way that runs westerly at the southerly terminus of Kingfisher Lane. The 24-foot right-of-way passes over the northern portion of the defendants' property. At the westerly end of the private right-of-way, there is a 6-foot passway to the beach and the passway is at the westernmost portion of the defendants' property.
In order for all of the plaintiffs to use the 6-foot passway to the beach, they have to go southerly to the end of Kingfisher Lane and turn westerly on the private right-of-way and, at the end of the private right-of-way, turn southerly on the passway.
Some owners on Kingfisher Lane have deeded beach rights to go on the private right-of-way and the passway. All of the plaintiffs have no deeded beach rights.
On February 20, 1987, the defendants' attorney sent certified letters to the original plaintiffs to inform the plaintiffs that they do not have beach rights and any rights to use the right-of-way. Copies of the attorney's letter were placed on the Westbrook Land Records.
Thereafter, the plaintiffs brought suit against the defendants claiming prescriptive rights to the right-of-way.
The defendants in their answer raise two special defenses: (1) any prescriptive rights acquired by the plaintiffs constitute personal easements or easements in gross; and, (2) plaintiffs have an alternative access to the beach. CT Page 1556
The defendants filed a counterclaim charging that the plaintiffs were trespassing.
On June 30, 1987, a temporary injunction was ordered giving permission to the plaintiffs to use the rights-of-way.
A map was introduced in evidence entitled "Quotonset Beach Area" and dated September 1941.
The map showed William J. Neidlinger owned property on both sides of a private road (now known as Kingfisher Lane).
All of the plaintiffs have derived their titles from William J. Neidlinger, although the map does not show a subdivision of the Neidlinger tracts.
The map also shows a "Neidlinger 20' Rt. of Way" leading to Seaside Avenue. The right-of-way leads from the westerly line of the Neidlinger tract on the westerly side of Kingfisher Lane. The right-of-way has not been used at all, at least in recent decades. The Neidlinger property, after the map was drawn, has been subdivided. The Neidlinger right-of-way has no access to Kingfisher Lane; and, the right-of-way is swampy.
Seven of the eleven plaintiffs are the descendants of William J. Neidlinger or are married to the descendants.
Many of the Neidlingers, whether they were owners or guests, used the passway, and there was evidence that the general public used it.
The case was tried to completion before the Hon. Joseph W. Bogdanski, State Trial Referee. The referee did not render a decision and returned the file. The attorneys agreed to have the undersigned render a decision on the transcripts. The attorneys agreed to have the undersigned view the premises.
 I.
Burden of Proof
Adverse possession is not to be made out by inference, but by clear and positive proof. Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36, 42; Roche v. Fairfield, 186 Conn. 490, 498; Whitney v. Turmel, 180 Conn. 147, CT Page 1557 148; Wadsworth Realty Co. v. Sundberg, 165 Conn. 457,462; Robinson v. Myers, 156 Conn. 510, 517.
The plaintiffs claim that the standard of proof is a fair preponderance of the evidence. They cite Reynolds v. Soffer, 190 Conn. 184. In the Reynolds case, the trial court found there was no evidence to show that the defendants claiming prescriptive rights ever received express permission to use the way. In essence, the supreme court found that the burden of proof on the express permission issue is a fair preponderance of the evidence. supra, p. 188.
 II.
The Elements of Adverse Possession
To acquire a right-of-way by prescription, the party claiming the right must prove a use which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. Robert S. Weiss Co. v. Mullins, 196 Conn. 614, 618-19; Conn. General Statutes 47-37
Reynolds v. Soffer, 190 Conn. 184, 187; Klar Crest Realty, Inc. v. Rajon Realty Corporation, 190 Conn. 163, 168. The defendants' actual knowledge of the existence of the right-of-way is not a necessary element of the plaintiff's proof. Robert S. Weiss Co. v. Mullins, supra. 619; Zavisza v. Hsting, 143 Conn. 40, 45-6. It is only in a case where the use of a right-of-way is in common with the public that the individual user must, in order to establish an independent prescriptive right, perform some act to the knowledge of the servient owner clearly indicating his individual claim of right. Robert S. Weiss Co. v. Mullins, supra. 619-20; Klar Crest Realty, Inc. v. Rajon Realty Corporation, supra. 168-9.
 III.
Tenants Rights
There was evidence that some tenants used the passway.
Unless a lease is effective to cover a right-of-way, the lessee's use of the way under it cannot enure to the benefit of the lessor.
The tenant's possession may be the possession of the landlord although the lease does not expressly include the land in question, when the landlord has CT Page 1558 represented to the tenant that such land was within the lease, or the landlord knew the tenant was occupying it and assented thereto, or there was other circumstances justifying the implication that it was occupied under and by virtue of the lease; but the tenant cannot, without direction or even knowledge or consent of the landlord, effect a disseisin in his favor or originate adverse possession. Deregibus v. Silberman Furniture Company, Inc.121 Conn. 633.
Whether the use of the right-of-way was included in the leases to the tenants is a question of fact. Such a right need not necessarily be expressed; it can be implied from all the circumstances. Systems, Inc., 146 Conn. 428, 433.
 IV.
Easement In Gross
"Easements are classified as either easements appurtenant or easements in gross. . . Two distinct estates are involved in an easement appurtenant: the dominant to which the easement belongs and the servient upon which the obligation rests. . . An easement appurtenant must be of benefit to the dominant estate but the servient estate need not be adjacent to the dominant estate. . . . An easement in gross is one which does not benefit the possessor of any tract of land in his use of it as such possessor. . . `An easement in gross belongs to the owner of it independently of his ownership or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the ownership of it."' (citations omitted) Saunders Point Assn., Inc. v. Cannon,177 Conn. 413, 415.
An easement in gross may be obtained by prescription. Ibid. 416-7.
 V.
Date When Acquisition Terminates
On February 20, 1987, the defendants' attorney sent certified letters to the plaintiffs purportedly complying with the prevention of acquiring rights to the passway. Conn. General Statutes Sec. 47-38.
Conn. General Statutes Sec. 47-39 provides that the notice referred to in section 47-38 shall be served like CT Page 1559 an original summons in civil actions.
The certified letters were defective in that they were not served like an original summons in civil actions.
On June 30, 1987, the court ordered a temporary injunction to allow the plaintiffs to use the passway. Acquisition terminates on June 30, 1987.
94 Kingfisher Lane
On July 16, 1876, the plaintiffs Neidlinger bought the property as a vacant lot. They built a house on it and they moved in 1986.
59 Kingfisher Lane
In November 30, 1962, the property was transferred to a trustee for the three minor children of the plaintiff William J. Neidlinger, III, subject to a reservation of a life estate to the plaintiff. The deed provided further that the plaintiff shall be entitled to possession thereof and all rents and income from the premises.
In December, 1986, the successor trustee quitclaimed the property to the plaintiff's three children. In the fall of 1986, the plaintiff's three children quitclaimed the property to the plaintiff William J. Neidlinger, III.
The plaintiffs William J. Neidlinger and Gretchen R. Neidlinger with their three children lived there from 1963.
The plaintiffs Neidlinger lived there until 1986 when they moved to 94 Kingfisher Lane. Gretchen did not own an interest in the property.
The plaintiff William still owns 59 Kingfisher Lane but the occupants do not use the passway. In addition, the plaintiff William had a life tenancy from 1962 to 1986.
By clear and positive proof, the plaintiffs Neidlinger have proved that they have used the passway, openly, visibly, continuously and uninterruptedly and with a claim of right since 1963.
The plaintiffs William J. Neidlinger, III and Gretchen B. Neidlinger have prescriptive rights to the passway CT Page 1560 in gross, not appurtenant.
75 Kingfisher Lane
The plaintiffs Gates and Graillat acquired the property on May 15, 1986. They are Neidlingers. Alma Neidlinger Fogg owned it and lived there since 1954 and she died in 1984. There was testimony that Fogg did not use the passway since 1980. The plaintiffs do not live there and they rent the premises.
The plaintiffs Gates and Graillat have not established by clear and positive proof that they, or predecessors in title, have used the passway for continuous and uninterrupted use for fifteen years.
75 Kingfisher Lane
The plaintiff Beattie and her husband Alan had acquired the property from the Platters in 1976. Her husband quitclaimed his interest to the plaintiff in 1977. The plaintiff died on December 27, 1987. On March 29, 1990, David Beattie was substituted for the plaintiff Louise as administrator of her estate.
She and her husband lived there since 1976. She testified in a preliminary hearing that she used the passway with permission of a property owner who had deeded beach rights. There was testimony that the defendant Pascal had given permission to the plaintiff Louise to use the passway. Her use of the passway was permissive so that her use was not adverse.
The plaintiff Daniel J. McKenna bought the property from Lloyd I. Foerch, Jr., on February 17, 1976. The plaintiff is the husband of plaintiff Carrie Neidlinger McKenna. At the beginning of the trial, she was added as a party plaintiff. She is a daughter of the plaintiffs Neidlinger. The McKennas were married in 1982 or 1983. The plaintiff Carrie does not own an interest in the property. At the trial, she testified she had lived on Kingfisher Lane between No. 59 and No. 50 for 27 years. She testified she used the passway for 27 years continuously and uninterruptedly.
Foerch had purchased the lot in 1971 and he built a house on it.
There is no clear and positive proof that Foerch had used the passway for about 3 1/2 years before Foerch sold it to McKenna. CT Page 1561
As to the plaintiff Daniel McKenna, he has not established by clear and positive proof that he, or predecessors in title, have used the passway for continuous and uninterrupted use for fifteen years.
The plaintiff Carrie N. McKenna had acquired a prescriptive easement to the passway in gross, and not appurtenant.
The plaintiff Magner purchased the property from Robert D. Willis and Natalie H. Willis on May 5, 1973. The house was built in 1963. The plaintiff was living in Hartford at the time she purchased it and there was no evidence presented that she used the passway before 1975.
47 Kingfisher Lane
The plaintiffs Wilson bought the property from Russell C. Arnts on December 27, 1978. Arnts bought the house and property in 1958. Arnts and the Wilsons did not live there. They rented the property.
There was little evidence as to what extent the tenants used the passway.
60 Kingfisher Lane
The plaintiff Nolf had been deeded the property by his parents on March 12, 1987. His father acquired the property from the plaintiff's grandmother in 1973. The plaintiff's grandparents had acquired the lot in 1954 and had lived on the property from 1954 to 1976. There was little evidence as to what extent the passway was used after 1976.
The court finds for the defendants on the first special defense and finds for the plaintiffs on the second special defense.
The court orders a permanent injunction restraining defendants and their successors in title from interfering with the plaintiffs', William J. Neidlinger, III, Gretchen R. Neidlinger and Carrie N. McKenna, right of way of access to and use the beach at the westernmost end of the defendants' property, for their respective lifetimes.
The court finds for the defendants on the counterclaim as against the plaintiffs Daniel J. McKenna, Magner, Gates, Graillat, the Wilsons, Nolf and Beattie. CT Page 1562
The court orders a permanent injunction prohibiting the plaintiffs Daniel J. McKenna, Magner, Gates, Graillat, the Wilsons, Nolf and Beattie from using the defendants' land as an accessway.
EDELBERG, STATE TRIAL REFEREE
Judgment Entered in Accordance with Foregoing Memorandum of Decision. Michael Kokoszka, Chief Clerk