## SMITH BROOK FARMS, INC. *v.* JOSEPH WALL ET AL.*

Superior Court       Judicial District of       File No. 92-0516004
Hartford-New Britain at Hartford

Memorandum filed March 27, 1997

*Sack, Spector & Barrett,* for the substitute plaintiff.

*Sorokin, Gross & Hyde,* for the named defendant.

HON. JERRY WAGNER, JUDGE TRIAL REFEREE. This is an action seeking to establish the rights of the substitute plaintiff, George M. Purtill (plaintiff), to a right-of-way across land of the named defendant, Joseph Wall (defendant), in order to access the plaintiff's land abutting on the north. The case presents unique circumstances in that although both parcels of land have frontage on the west side of Main Street, Glastonbury, the plaintiff claims that he is unable for practical reasons to enter his land from the street. He claims that he has obtained by prescription a right-of-way running from Main Street across the full depth of the defendant's property approximately 750 feet (by scale) from which, by crossing over the property of owners of other lands to the rear, he is thus able to access his property toward its rear or western boundary.

---

* Affirmed. *Smith Brook Farms, Inc.* v. *Wall,* 52 Conn. App. 34, 725 A.2d 987 (1999).

In his revised amended complaint dated March 29, 1994, the plaintiff seeks in the first count a declaratory judgment confirming the right-of-way by prescription; the second count seeks damages for obstruction; the third count seeks a judgment to quiet title. The defendant has generally denied these allegations except for his efforts to block the right-of-way, and has filed a four count counterclaim alleging trespass and seeking a determination of title denying the existence of the right-of-way.

In earlier complaints filed by the plaintiff and the predecessor plaintiff, Smith Brook Farms, Inc., there were separate counts claiming the right-of-way on the basis of estates, by necessity and by prescription, but the plaintiff has abandoned all claims except by prescription.

Trial was before this court on July 25, 30, 31, August 1 and 14, 1996, with briefs and proposed findings of fact filed on November 1, 1996.

On January 31, 1997, attorneys for the parties met in court chambers to consider a compromise solution, which, after consultation with their clients, was rejected. There was an advanced stipulation that consideration of the compromise solution would in no way affect the ability of the court to render a decision in this matter and an extension of time was granted for the court to render its decision.

I

The plaintiff is the owner of an undeveloped parcel of land having a frontage of approximately 300 feet on the west side of Main Street, Glastonbury, known as lot no. 104. He is the successor in interest of Smith Brook Farms, Inc., the original plaintiff, which acquired title in 1979 from George Gates and Everett Gates. The

defendant is the owner of 1559 Main Street, a lot containing his residence lying south of and adjacent to the plaintiff's property, with a similar frontage of approximately 300 feet. Both of these properties are bounded on the west, rear boundaries by undeveloped properties running to the Connecticut River and constituting a floodplain that is used primarily for agricultural and recreational purposes. For many years, various owners of these floodplain properties had used paths over 1559 Main Street to gain access to their properties. The plaintiff and his predecessors have from time to time used these same paths across 1559 Main Street to access lot no. 104, by starting from the front driveway then either proceeding west to the rear of the Wall property to Calvin Bushnell's property and then crossing over the Bushnell property to the rear of lot no. 104, or by proceeding along paths straddling certain sewer easements to the southwest corner of lot no. 104. The plaintiff and his predecessors in title used these paths because the low and wet nature of the eastern portion of lot no. 104 fronting Main Street made access directly from Main Street difficult if not impossible. The paths across the defendant's premises were used for foot and vehicular traffic in recent years varying from three to eight times a year, primarily in the summer months.

Soon after the defendant acquired title to 1559 Main Street on March 30, 1984, the parties engaged in conversations in which it became evident that they disagreed as to the existence and extent of any right-of-way across the defendant's land. The plaintiff continued to use the paths from time to time until the fall of 1984 when the defendant placed a chain and lock across his driveway at a point approximately 270 feet (by scale) from the street line. There were removals of the lock by the plaintiff and replacements by the defendant, and the plaintiff succeeded in overcoming various obstacles

placed on the paths by the defendant to cross the defendant's land and make seasonal visits to lot no. 104.

In May, 1986, the defendant changed the physical location of his driveway from Main Street, which had run northwest from Main Street, within a twenty foot right-of-way used by the town to access a permanent sewer easement, to a more western line close to his southern boundary line. The front portion of the old driveway running northwesterly was seeded over. The plaintiff and his predecessors had used the old driveway route to reach the area of the locked gate, but thereafter the plaintiff followed the path of the new driveway whenever he crossed the defendant's premises. On August 23, 1994, the defendant filed a notice in the Glastonbury land records of his dispute of any right-of-way across his premises by the plaintiff pursuant to General Statutes § 47-38 et seq. Despite this notice and various obstacles placed on the paths, the plaintiff continued to use the paths across the defendant's premises to access lot no. 104.

## II

At trial, the plaintiff introduced a map entitled "Town of Glastonbury, Connecticut Permanent Access R.O.W. on Property of Paul and Virginia H. Smith, Luchs & Beckerman Glastonbury, Conn. A 72-9 R.O.W. Scale 1" = 40' Date 10-23-74" on file in the Glastonbury town clerk's office (plaintiff's exhibit 1), which shows a path marked by hyphenated lines delineated "Dirt Driveway" running from the southeast corner of the defendant's land to the rear of his premises. Neither the length nor width of this path appears on the map, but its scale length appears to be approximately 750 feet and its scale width appears to be approximately 10 feet. It is not fixed by monuments or metes and bounds and runs to a point on the western boundary of the defendant's premises

(the eastern boundary of the Bushnell property) approximately 165 feet (by scale) from the southern boundary of the plaintiff's land. Both Bushnell and the plaintiff testified that this was the path that had been used by them to access their respective lands.

The plaintiff also introduced a map (exhibit 9) entitled "Prepared for George Purtill, Glastonbury Conn. Megson & Heagle Civil Engineers & Land Surveyors Glastonbury, Conn. Date 9-19-84 Scale -1" = 40' " showing a series of "wheel tracks" in hyphenated lines running to some extent along the route of the "dirt driveway" shown in exhibit 1. The first 220 feet (by scale) are shown as "10' Gravel Drive." Thereafter, there is shown one designated path veering to the right in a northwest direction and one path designated "wheel tracks" continuing west for approximately 200 feet (by scale) to a fork with two branches, the south branch continuing an additional 280 feet, more or less (by scale) to the Bushnell property. The other fork turns to the northwest, then west, then northwest within a 25 foot sewer easement shown on said map, altogether for an additional 400 feet, more or less (by scale) to an undetermined point still within the defendant's premises, this latter fork also designated "wheel tracks."

The plaintiff testified that he regularly used the paths designated as "wheel tracks" from the time Smith Brook Farms, Inc., acquired lot no. 104 in 1984, using primarily the northwest fork between 1984 and 1986, and the south branch after 1988. He further testified that after the defendant relocated the front driveway in May, 1986, he used the relocated driveway, which runs west from Main Street close to the defendant's southern boundary and then turns north following the north turn of the boundary line, then joining the paths marked "wheel tracks" shown on said map.

Everett Gates, predecessor owner together with his brother of lot no. 104, testified that from the time he

was eight years old in 1938, his family had accessed their land each summer approximately along the path shown on the first map (exhibit 1) for the purposes of mowing hay, pasturing cattle, and cutting wood, on foot and by vehicle, with a three year hiatus of such use occurring between 1976 and 1979. He never thought to obtain permission from anyone to cross the defendant's premises and observed town employees using the paths to service the sewer right-of-way. When he and his brother conveyed lot no. 104 to Smith Brook Farms, Inc., it was conveyed together with the right-of-way across the defendant's land.

An affidavit, dated July 26, 1995, signed by Paul Smith, who together with his wife sold 1559 Main Street to the defendant (exhibit 2) states that he and his wife acquired 1559 Main Street in January, 1966, from the Dickenson estate, that at the time there was a packed dirt roadway with several spurs approximately twelve feet wide running along the southern portion of the property from Main Street as shown on an aerial photograph of the premises (exhibit C). Based on a title search by his attorney, he believed that owners of premises to the west and north had the right to use the roadway to access their properties and the defendant was so informed when he purchased the property from Smith in 1984.

Bushnell, the owner of the property lying west and to the rear of both 1559 Main Street and lot no. 104, testified that he had been using the path over 1559 Main Street to access his property since he acquired it in 1975 but does not believe he owns it. He permits the plaintiff to cross over his property from the rear of 1559 Main Street to access lot no. 104 from the rear.

In addition to the testimony of the parties and various exhibits introduced into evidence, there was testimony from John L. Heagle, an engineer and land surveyor,

whose firm had prepared the map introduced as exhibit G, who opined that the paths shown on the map were the same as shown on an aerial map, but he had not actually viewed the premises before his firm prepared the map.

There was other copious evidence involving chains of titles and other maps, that might be relevant if the plaintiff were claiming the right-of-way based on estate claims or claims by necessity, but the only claim of the plaintiff at trial was that he has a right-of-way obtained by prescriptive use.

### III

General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

The law governing the acquisition of prescriptive easements has been succinctly summarized in *Westchester* v. *Greenwich*, 227 Conn. 495, 501, 629 A.2d 1084 (1993): "Prescriptive easements are recognized in this state. General Statutes § 47-37; *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation*, 190 Conn. 163, 459 A.2d 1021 (1983). 'To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised.' *Whiting* v. *Gaylord*, 66 Conn. 337, 344, 34 A. 85 (1895). In order to prove such adverse use, the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been 'open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.' *Andrzejczyk* v. *Advo System, Inc.*, 146 Conn. 428, 431, 151 A.2d 881 (1959); *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation*, supra, 168; *Putnam, Coffin & Burr, Inc.* v. *Halpern*, 154 Conn.

507, 515, 227 A.2d 83 (1967). There can be no claim of right unless the use is 'unaccompanied by any recognition of [the right of the servient tenement] to stop such use. A use by express or implied permission or license cannot ripen into an easement by prescription.' *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22 (1936); *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation,* supra [168]. Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions." See also *Gioielli* v. *Mallard Cove Condominium Assn., Inc.,* 37 Conn. App. 822, 829, 658 A.2d 134 (1995).

Moreover our Supreme Court has held that a " 'prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty.' " *Schulz* v. *Syversten,* 219 Conn. 81, 92, 591 A.2d 804 (1991).

The plaintiff's claim to a right-of-way fails for two separate reasons: (1) he has failed to establish an uninterrupted use of right-of-way for a period of fifteen years; and (2) he has failed to establish the bounds of such right-of-way with sufficient certainty. It is concluded that the use of the paths across the defendant's land by the plaintiff and his predecessors during the years when such use was uncontested did not give rise to a prescriptive easement or right-of-way under Connecticut law.

IV

The plaintiff in his amended complaint depends for his claim of title by prescription on the uninterrupted use of the right-of-way for a period greater than fifteen years by the Gates family (1974–1979), the plaintiff 1979–1988 and Smith Brook Farms, Inc., 1988–1992. But the clear testimony of Everett Gates was that neither he, nor anyone in privity with him, had used any path right-of-way across the defendant's land between 1976 and 1979. Whether the calculation concludes with 1992

or 1994, there has been no uninterrupted adverse use for the required fifteen year period.

In August, 1994, the defendant placed a notice disputing the plaintiff's claim to a right-of-way pursuant to General Statutes § 47-38. Under the statute such notice "shall be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter." General Statutes § 47-38.

Thus, under any calculation, the plaintiff had to establish an uninterrupted period of fifteen years prior to August, 1994, and this he has failed to do.

Everett Gates and his brother acquired a partial interest in lot no. 104 by inheritance from their father in February, 1935, and the final undivided one-sixth interest from their mother Ina B. Gates in 1978. His testimony with respect to use of the right-of-way prior to 1976 is not deemed sufficient to establish that he or his predecessors in title had maintained an "open, visible and exclusive" use of the right-of-way without license or consent of the owner for an uninterrupted period of fifteen years prior to or including the year, 1976.

V

The evidence and the various maps produced by the plaintiff fail to define a right-of-way the bounds of which can be described with reasonable certainty. Aside from the fact that the various maps and photographs of wheel tracks show offshoots from the wheel tracks that are closest to the south boundary of the defendant's premises, comparison of the various maps and aerial photographs fails to establish a clearly delineated route that was used regularly or continuously. Furthermore, there are no courses or distances on any of the maps, running from monuments or other fixed points by which the path or right-of-way could be reasonably ascertained or described. Indeed, the plaintiff offers no useful

description of the claimed right-of-way and in his post-trial brief requests the court to "fix the easement location" and that it be "twenty (20') feet along its entire course." The court is unable to determine which sketch on which map accurately reflects the path used continuously by the plaintiff and his predecessors or where that path is located. Our Appellate Court has ruled that a "right-of-way must be defined in terms of its boundaries with reasonable certainty. *Kaiko* v. *Dolinger*, 184 Conn. 509, 511, 440 A.2d 198 (1981). If the trial court cannot determine the bounds to a reasonable degree of certainty, a judgment for a prescriptive easement is invalid." *Wacksworth* v. *Zahariades,* 1 Conn. App. 373, 377, 472 A.2d 29 (1984). There are no specific measurements sufficient to sustain a finding of the dimensions of a right-of-way, as was the case in *Robert S. Weiss & Co.* v. *Mullesis,* 196 Conn. 614, 621, 495 A.2d 1006 (1985).

VI

A third claim of the defendant, in opposing the finding of a prescriptive right-of-way in favor of the plaintiff is based on the fact that the claimed right-of-way runs not to the plaintiff's land but to Bushnell's land and Bushnell is not a party in this action, so that this court could not find or establish any legal right-of-way over the Bushnell land to lot no. 104.

It is well established that a right-of-way claimed by a user must run to or abut land owned by the claimant or if it runs to an intervening parcel of land the user must have a legal right-of-way over that intervening parcel. *Stiefel* v. *Lindemann,* 33 Conn. App. 799, 813 A.2d 642, cert. denied, 229 Conn. 914, 642 A.2d 1211 (1994). Although Bushnell appeared as a witness and testified that he had never objected to the plaintiff or his predecessors in title about crossing his land to reach lot no. 104 for farming or recreational purposes, this evidence fell far short of establishing that the plaintiff

had a legal right-of-way, let alone one clearly delineated, over the Bushnell property. This third claim by the defendant, argued orally, appears to have merit and would be an additional reason for finding against the plaintiff in this case.

For the above reasons it is found that the plaintiff has failed to sustain his claim for a prescriptive easement or right-of-way across the defendant's land.

Judgment is entered for the defendant on all counts of the plaintiff's complaint.

Judgment is entered for the defendant on that part of the fourth count of his counterclaim alleging that the plaintiff has no right-of-way or easement by prescription over premises of the defendant known as 1559 Main Street, Glastonbury.

Judgment is entered on the first count of the defendant's counterclaim claiming trespass by the plaintiff and the defendant is found to have sustained damages of $1000 by reason of such trespass which required the defendant to replace stone and other materials on or around the paths.

It is found that it is either unnecessary to make separate findings or that the defendant has failed to sustain his burden of proof with respect to counts two and three of his counterclaim.