[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking to establish Plaintiff's right to a right of way across land of the Defendant in order to access Plaintiff's land abutting on the north. The case presents unique circumstances in that although both parcels of land have frontage on the west side of Main Street, Glastonbury. Plaintiff claims he is unable for practical reasons to enter his land from the street, and that he has obtained by prescription a right of way running from Main Street across the full depth of Defendant's property approximately 750 feet (by scale) and then by crossing over the property of owners of other lands to the rear, is thus able to access his property toward its rear or westerly boundary.
In his revised amended complaint dated March 29, 1994, Plaintiff seeks in the first count a declaratory judgment confirming the right of way by prescription; the second count seeks damages for obstruction; the third count seeks a judgment to quiet title. Defendant has generally denied these allegations except for his efforts to block the right of way, and has filed a four count counterclaim alleging trespass and seeking a determination of title denying the CT Page 3257 existence of the right of way.
In earlier complaints filed by Plaintiff and predecessor Plaintiff, Smith Brook Farms Inc., there were separate counts claiming the right of way on the basis of estates, by necessity and by prescription, but the Plaintiff has abandoned all claims except by prescription.
Trial was had before this court on July 25, 30, 31; August 1 and 14, 1996 with briefs and proposed findings of fact filed on November 1, 1996.
On January 31, 1997, attorneys for the parties met in the court chambers to consider a compromise solution, which after consultation with their clients, was rejected. There was an advanced stipulation that consideration of the compromise solution would in no way affect the ability of the court to render a decision in this matter and an extension of time was granted for the court to render its decision.
— I —
Substitute Plaintiff George Purtill is the owner of an undeveloped parcel of land having a frontage of approximately 300 feet on the west side of Main Street, Glastonbury, known as lot No. 104. He is the successor in interest of Smith Brook Farms, original Plaintiff, which acquired title in 1979 from George and Everett Gates. Defendant Joseph Wall is the owner of 1599 Main Street, a lot containing his residence lying southerly and adjacent to Plaintiff's property, with a similar frontage of approximately 300 feet. Both these properties are bounded on their western rear by undeveloped properties running to the Connecticut River and constituting a flood plain which is used primarily for agricultural and recreational purposes. For many years, various owners of these flood plain properties had used paths over 1599 Main Street to gain access to their properties. Plaintiff and his predecessors have from time to time used these same paths across 1599 Main Street to access Lot No. 104, by starting from the front driveway then either proceeding westerly to the rear of the Wall property to the Bushnell property in the rear and then crossing over the Bushnell property to the rear of Lot No. 104, or by proceeding along paths straddling CT Page 3258 certain sewer easements to the southwesterly corner area of Lot No. 104. Purtill and his predecessors in title used these paths because the low and wet nature of the easterly portion of Lot No. 104 fronting Main Street made access directly from Main Street difficult if not impossible. The paths across Defendant's premises were used for foot and vehicular traffic in recent years varying from three to eight times a year, primarily in the summer months.
Soon after Defendant Joseph Wall acquired title to 1599 Main Street on March 30, 1984, the parties engaged in conversations in which it became evident that they disagreed as to the existence and extent of any right of way across Defendant's land. Plaintiff continued to use the paths from time to time until fall of 1984 when Defendant placed a chain and lock across his driveway at a point approximately 270 feet (by scale) from the street line. There were removals of the lock by Plaintiff and replacements by Defendant, and Plaintiff succeeded in overcoming various obstacles placed on the paths by Defendant to cross Defendant's land and make seasonal visits to Lot No. 104.
In May, 1986 Defendant changed the physical location of his driveway from Main Street, which used to run northwesterly from Main Street, within a twenty foot right of way used by the town to access a permanent sewer easement, to a more westerly line close to his southerly boundary line. The front portion of the old driveway running north westerly was seeded over. Plaintiff and his predecessors had used the old driveway route to reach the area of the locked gate, but thereafter Plaintiff followed the path of the new driveway whenever he crossed Defendant's premises. On August 23, 1994 Defendant filed a notice in the Glastonbury Land Records of his dispute of any right of way across his premises by Plaintiff pursuant to General Statutes § 47-38 et seq. Despite this notice and various obstacles placed on the paths, Plaintiff continued to use the paths across Defendant's premises to access Lot No. 104.
— II —
At trial Plaintiff introduced a map entitled "Town of Glastonbury, Connecticut Permanent Access R.O.W. on Property of Paul and Virginia H. Smith, Luchs Beckerman Glastonbury, Conn. A 72-9 R.O.W. Scale 1" = 40' Date 10-23-74" CT Page 3259 on file in the Glastonbury Town Clerks Office (Plaintiff's Exhibit 1) which shows a path shown by hyphenated lines delineated "Dirt Driveway" running from the southeast corner of Defendant's land to the rear of his premises. Neither the length or width of this path appears on the map, but its scale length appears to be approximate 750 feet and its scale width appears to be approximately 10 feet wide. It is not fixed by monuments or metes and bounds and runs to a point in the westerly line of Defendant's premises (the easterly line of the Bushnell property) approximately 165 feet (by scale) from the southerly boundary of Plaintiff's land. Both Mr. Bushnell and the Plaintiff testified that this was the path that had been used by them to access their respective lands.
Plaintiff also introduced a map (Exhibit 9) entitled "Prepared for George Purtill, Glastonbury Conn. Megson Heagle Civil Engineers Land Surveyors Glastonbury, Conn. Date 9-19-84 Scale -1" = 40' showing a series of "wheel tracks" in hyphenated lines running to some extent along the route of the "dirt driveway" shown on Exhibit 1. The first 220 feet (by scale) are shown as "10' Gravel Drive." Thereafter, there is shown one designated path veering to the right in a northwesterly direction and one path designated "wheel tracks" continuing in a westerly direction for approximately 200 feet (by scale) to a fork with two branches, the southerly branch continuing an additional 280 feet, more or less (by scale) to the Bushnell property. The other fork turns into a northwesterly direction, then westerly, then northwesterly within a 25 foot sewer easement shown on said map, altogether for an additional 400 feet, more or less (by scale) to an undetermined point still within Defendant's premises, this latter fork also designated "wheel tracks."
Plaintiff testified that he regularly used the paths designated as "wheel tracks" from the time Smith Brook Farms, Inc. acquired Lot No. 104 in 1984, using primarily the northwesterly fork between 1984 and 1986, and the southerly branch after 1988. He further testified that after Defendant relocated the front driveway in May, 1986, he used the relocated driveway which runs westerly from Main Street close to Defendant's southerly boundary line and then turns northerly following the northerly turn of the boundary line, then joining the paths marked "wheel tracks" shown on CT Page 3260 said map.
Everett Gates, predecessor owner together with his brother of Lot No. 104 testified that from the time he was eight years old in 1938 that his family had accessed their land each summer approximately along the path shown on the first map (Exhibit 1) for the purposes of mowing hay, pasturing cattle, and cutting wood, on foot and by vehicle, with a three year hiatus of such use occurring between 1976 and 1979. He never thought to obtain permission from anyone to cross Defendant's premises and observed town employees using the paths to service the sewer right of way. When he and his brother conveyed Lot No. 104 to Smith Brook Farms, Inc., it was conveyed together with the right of way across Defendant's land.
An affidavit, dated July 26, 1995, signed by Paul Smith who together with his wife sold 1599 Main Street to Defendant (Exhibit 2) states that he and his wife acquired 1599 Main Street in January, 1966 from the Dickenson estate, that at the time there was a packed dirt roadway with several spurs approximately twelve feet wide running along the southerly portion of the property from Main Street as shown on an aerial photo of the premises (Exhibit C). Based on a title search by his attorney, he believed that owners of premises to the west and north had the right to use the roadway to access their properties and Defendant was so informed when he purchased the property from Smith in 1984.
Calvin Bushnell, the owner of the property lying westerly and to the rear of both 1599 Main Street and Lot No. 104, testified that he had been using the path over 1599 Main Street to access his property since he acquired it in 1975 but does not believe he owns it. He permits Plaintiff to cross over his property from the rear of 1599 Main Street to access Lot 104 from the rear.
In addition to the testimony of the parties and various exhibits introduced into evidence there was testimony from John L. Heagle, an engineer and land surveyor, whose firm had prepared the map introduced as Exhibit G who opined that the paths shown on the map were the same as shown on an aerial map, but he had not actually viewed the premises before his firm prepared the map. CT Page 3261
There was other copious evidence involving chains of titles and other maps, that might be relevant if Plaintiff was claiming the right of way based on estate claims or claims by necessity, but the only claim of Plaintiff at trial was that he has a right of way obtained by prescriptive use.
— III —
General Statutes § provides:
 No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years.
The law governing the acquisition of prescriptive easements has been succinctly summarized in Westchester v.Greenwich, 227 Conn. 495, 501 (1993):
 Prescriptive easements are recognized in this state. General Statutes § 47-37; Klar Crest Realty, Inc. v. Rajon Realty Corporation, 190 Conn. 163, 459 A.2d 1021 (1983). "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." Whiting v. Gaylord, 66 Conn. 337, 344, 34 A. 85
(1895). In order to prove such adverse use, the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been "open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." Andrzejczyk v. Advo System, Inc., 146 Conn. 428, 431, 151 A.2d 881 (1959); Klar Crest Realty, Inc. v. Rajon Realty Corporation, supra, 168; Putnam, Coffin Burr, Inc. v. Halpern, 154 Conn. 507, 515, 227 A.2d 83
(1967). There can be no claim of right unless the use is "unaccompanied by any recognition of [the right of the servient tenement] to stop such use. A use by express or implied permission or license cannot ripen into an easement by prescription." CT Page 3262 Sachs v. Toquet, 121 Conn. 60, 66, 183 A. 22
(1936); Klar Crest Realty, Inc. v. Rajon Realty Corporation, supra. Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions.
See also Gioielli v. Mallard Cove Condominium Assn., Inc.,37 Conn. App. 822, 829 (1995).
Moreover our Supreme Court has held that a prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty. Schulz v. Syversten,219 Conn. 81, 92 (1991).
Plaintiff's claim to a right of way fails for two separate reasons; firstly, he has failed to establish an uninterrupted use of right of way for a period of fifteen years and secondly, he has failed to establish the bounds of such right of way with sufficient certainty. It is concluded that the use of the paths across Defendant's land by Plaintiff and his predecessors during the years when such use was uncontested did not give rise to a prescriptive easement or right of way under Connecticut law.
— IV —
Plaintiff in his amended complaint depends for his claim of title by prescription on the uninterrupted use of the right of way for a period greater than fifteen years by the Gates family (1974 to 1979), the Plaintiff 1979-1988 and Smith Brook Farms 1988 to 1992. But the clear testimony of Everett Gates was that neither he, nor anyone in privity with him, had used any path right of way across Defendant's land between 1976 and 1979. Whether the calculation concludes with 1992 or 1994, there has been no uninterrupted adverse use for the required fifteen year period.
In August 1994, Defendant placed a notice disputing Plaintiff's claim to a right of way pursuant to General Statutes § 47-38. Under the statute such notice "shall be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any time thereafter." CT Page 3263
Thus under any calculation Plaintiff had to establish an uninterrupted period of fifteen years prior to August, 1994, and this he has failed to do.
Everett Gates and his brother acquired a partial interest in Lot No. 104 by inheritance from his father in February, 1935 and the final undivided one-sixth interest from their mother Ina B. Gates in 1978. His testimony with respect to use of the right of way prior to 1976 is not deemed sufficient to establish that he or his predecessors in title had maintained an "open, visible and exclusive" use of the right of way "without license or consent of the owner for an uninterrupted period of fifteen years prior to or including the year, 1976.
— V —
The evidence and the various maps produced by Plaintiff fail to define a right of way the bounds of which can be described with reasonable certainty. Aside from the fact that the various maps and photographs of wheel tracks show offshoots from the wheel tracks which are closest to the southerly boundary of Defendant's premises, comparison of the various maps and aerial photographs fails to establish a clearly delineated route which was used regularly or continuously. Furthermore, there are no courses or distances on any of the maps, running from monuments or other fixed points by which the path or right of way could be reasonably ascertained or described. Indeed, Plaintiff offers no useful description of the claimed right of way and in his post trial brief requests the court to "fix the easement location" and that it be "twenty (20') feet along its entire course." The court is unable to determine which sketch on which map accurately reflects the path used continuously by Plaintiff and his predecessors or where that path is located. Our Appellate Court has ruled that a "right of way must be defined in terms of its boundaries with reasonable certainty . . . If the trial court cannot determine the bounds to a reasonable degree of certainty, a judgment for a prescriptive easement is invalid." Wacksworthv. Zahariades, 1 Conn. App. 373, 377 (1984). See alsoKaiko v. Dolinger, 84 Conn. 509, 511 (1981). There are no specific measurements sufficient to sustain a finding of the dimensions of a right of way, as was the case in RobertCT Page 3264S. Weiss Co. v. Mullesis, 196 Conn. 614, 621 (1985).
— VI —
A third claim of Defendant, in opposing the finding of a prescriptive right of way in favor of the Plaintiff is based on the fact that the claimed right of way runs not to Plaintiff's land but to land of Calvin Bushnell, and Bushnell is not a party in this action, so that this court could not find or establish any legal right of way over the Bushnell land to Lot No. 104.
It is well established that a right of way claimed by a user must run to or abut land owned by the claimant or if it runs to an intervening parcel of land the user must have a legal right of way over that intervening parcel. Stiefel v.Lindemann, 33 Conn. App. 799 (1994). Although Calvin Bushnell appeared as a witness and testified that he had never objected to Plaintiff or his predecessors in title from crossing his land to reach Lot No. 104 for farming or recreational purposes, this evidence fell far short of establishing that Plaintiff had a legal right of way, let alone one clearly delineated, over the Bushnell property. This third claim by Defendant, argued orally, appears to have merit and would be an additional reason for finding against the Plaintiff in this case.
For the above reasons it is found that Plaintiff has failed to sustain his claim for a prescriptive easement or right of way across Defendant's land.
Judgment is entered for the Defendant on all counts of Plaintiff's complaint.
Judgment is entered for the Defendant on that part of the fourth count of his counterclaim alleging that George Purtill has no right of way or easement by prescription over premises of the Defendant known as 1599 Main Street, Glastonbury.
Judgment is entered on the first count of Defendant's counterclaim claiming trespass by Plaintiff and Defendant is found to have sustained damages of one thousand dollars ($1,000) by reason of such trespass which required Defendant to replace stone and other materials on or around the paths. CT Page 3265
It is found that it is either unnecessary to make separate findings or that Defendant has failed to sustain his burden of proof with respect to counts two and three of his counterclaim.
Jerry Wagner Trial Judge Referee