[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff originally brought this action in Small Claims Court for additional costs to erect a fence between his property and that of the defendant because the plaintiff blocked his work and would not let him complete the fence causing a delay of one day. As a result the plaintiff had to pay extra for the delay. The defendant filed an answer special defense and counterclaim and moved to have the case transferred to the Superior Court which was done. CT Page 1828
 Facts
On December 8, 2002, the plaintiff put up a chain link fence on the south side of his property between his land and that of the defendant. While the contractors attempted to put up the fence, defendant's employees blocked the work area with cars and caused a delay of one day. The cost of the delay was billed by the contractor to the plaintiff in the amount of an additional $960, which the plaintiff paid and now seeks to recover from the defendant.
The counterclaim alleges a prescriptive easement on the plaintiff's property where the fence is located.
The evidence shows that the plaintiff owned a restaurant called the Green Onion Restaurant since 1988, and has operated it continuously since that time. Winner Ford is a car dealership north of the plaintiff's property. Mr. Sherman owned Winner Ford until February 4, 1997, when it was purchased by Phil Price the present owner. Price claims that he used the property of the plaintiff for access to his dealership and to park cars. The exact area used for this is at the northern end of plaintiff's property and the southern end of the defendant's property. Price claimed that the area is "nine feet on either side of the existing fence line." He also said that there existed a "road" which delineates the prescriptive area. Neither the photos nor the maps in evidence show any signs of a road. The area as depicted in the photos shows an indistinguishable macadam/asphalt area that surrounds the buildings on both properties. In 1997, Price asked the plaintiff for permission to lease the building on the east end of the plaintiff's property and the land around it for parking. At that time he did not claim any easement to use the plaintiff's parking lot. The first time he claimed an easement was December 8, 2000, when he tried to block the plaintiff's fence. The lease of the building was never agreed to.
The defendant presented several witnesses to prove adverse use of plaintiff's land. Helen Zei testified that she was office manager of Sherman Ford, then Winner Ford from 1955 until 1995. She testified that she saw delivery vehicles use the restaurant property on a daily basis. However, she was inside the building and did not actually see the vehicles while they were on the plaintiff's property, but only after they were on Route 12. She never actually saw them on the plaintiff's property and had no specific knowledge as to the precise area where they crossed the plaintiff's property.
Scott Roy worked for Sherman Ford as the service manager from 1996 through 1997 and then four years thereafter for Winner Ford. He testified that trucks and delivery vehicles used the "road" from 1996 until the CT Page 1829 present. he also said that he and other employees were instructed not to park on the plaintiff's property. He acknowledged that he and other employees often frequented the plaintiff's restaurant. Raymond Theroux was service manager for Sherman Ford and Winner Ford from 1976 until 1998. He saw several vehicles a day loop around the building of Winner Ford using the restaurant property to enter or exit the dealership.
George Audette delivered auto parts to the defendant for the past thirteen years. He says he took the easiest way to access the property. He said he would use the restaurant property to enter and exit the premises. Steve Lombardi delivered oil to the defendant and used restaurant property. However, he also delivered oil to the plaintiff at times. Earl Palmer, waste disposal, collected rubbish from both plaintiff and defendant and used the plaintiff's property at times when he did so.
Ron Saracen sold the restaurant to the plaintiff in 1988. He had owned it since 1975. He had a good relationship with Sherman and they often let each other's customers park on their properties. The plaintiff had a similar relationship with Sherman. He gave permission to the defendant and his employees and business associates to use his parking lot from time to time.
The testimony from John Malinick was given in a deposition dated December 10, 2001. The court has reviewed it along with the testimony of the other witnesses. Malinick says he delivered tools to the defendant since 1977 and he claims he drove over plaintiff's property and also parked there once a week for all of those years.
The witnesses on both sides gave varied and sometimes contradictory accounts of the use of the plaintiff's property. However, there was no testimony that the employees or agents of the defendant were instructed to use the property of the plaintiff in derogation of his rights. No witness who delivered to the defendant testified that it used plaintiff's property at the direction of the defendant or would serve to give notice to the plaintiff of the claims being made by the defendant.
 Discussion
The plaintiff claims that the defendant has failed to meet its burden in establishing a right to a prescriptive easement. To acquire a right-of-way by a prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. C.G.S. § 47-37; Putnam, Coffin Burr, Inc. v.Halpern, 154 Conn. 507, 515 (1967). See also Klar Crest Realty, Inc. v.Rajon Realty Corporation, 190 Conn. 163, 168 (1983). CT Page 1830
The defendant's predecessor in title is dead. No witness testified regarding any designs by Sherman, the defendant's predecessor, to acquire prescriptive rights. Both Saracen and Lanis testified to the contrary. Both of them acknowledged a professional business relationship with Sherman. In the case of Sachs v. Toquet, 121 Conn. 60 (1936), the plaintiff relied upon a right based upon his claimed adverse use of the driveway. The court found that the temporary parking of vehicles in the driveway while loading or unloading might have continued for years without interference with the use of the driveway by the defendants, and such parking would be more consistent with a permissive use as a matter of neighborly accommodation than an invasion of the defendant's rights under a claim of right.
A use by express or implied permission cannot create an easement by prescription. Kaiko v. Dolinger, 184 Conn. 509, 512 (1981).
Another definition of a prescriptive easement is as follows: "the well-established statutory elements necessary to establish an easement by prescription are that the use is (1) open and visible; (2) continuous and uninterrupted for fifteen years; and (3) engaged under a claim of right . . . a prescriptive easement must be proved by a fair preponderance of the evidence." Faught v. Edgewood Corners, Inc. 63 Conn. App. 164, 168, cert. denied 256 Conn. 934 (2001). Whether a right-of-way prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and surrounding circumstances have been considered. Id.
Plaintiff further claims that the defendant's prescriptive claim must fail in the light of the holding in Klar Crest Realty, Inc. v. RajonRealty Corporation, 190 Conn. 163 (1983). The defendant offered the testimony of numerous trades people who provided goods or services to Sherman Ford. Testimony was offered from garbage and oil delivery men, parts delivery men and a tool delivery man. Additionally witnesses who were employees of either Sherman Ford or Winner Ford testified that they witnessed use by the general public, i.e. customers of the dealership. Sherman Ford never performed any act clearly indicating Sherman Ford's individual claim of right.
The plaintiff claims that the alleged use by trades people and customers creates an inference that the public had implied permission to do so and that the use of the prescriptive area by Winner Ford was indistinguishable from that of the public. In Klar Crest Realty, Inc.,
supra, the court held; "where the use of a right-of-way is common to the public, that common use is regarded as negating a presumption of grant to any individual use. In such a case, the individual user must, in order to establish an independent prescriptive right, perform some act to the CT Page 1831 knowledge of the servient owner clearly indicating his individual claim of right." Id., 168.
In other words, there must have been a use of the way by the defendant distinctive from that of the general public in order to sustain its claim of prescriptive right. That is not the case here.
The court also finds that the defendant failed to prove its case in as much as it failed to show with precision the area prescriptively claimed. The witnesses were very vague as to exactly where the so-called "road" existed. There was no evidence on maps or photographs. The witnesses offered by the defendant testified in general terms where the vehicles may have traveled.
A prescriptive right cannot be acquired traveling over land unless the use defines its boundaries with reasonable certainty. Taylor v. Dennehy,136 Conn. 398, 404 (1950).
The defendant's use was not open and visible for purposes of claiming a prescriptive easement. Again, the witnesses of the defendant from tools salesmen to delivery men, all of whom claimed to drive over some indeterminate portion of the plaintiff's property failed to distinguish where the area of the prescription was claimed to have existed. The photographs indicate both businesses are surrounded by unending macadam/asphalt with no particular road or any other such specific location.
The case of Zavisza v. Hastings, 143 Conn. 40, 45 (1955) sets forth the requirements for a prescriptive right-of-way. They must be in effect open and visible, continuous and uninterrupted for fifteen years and engaged in under a claim of right.
In the instant case of field of macadam surrounds both the plaintiff's and the defendant's properties. There is no delineation which would have put Saracen or Lan is on notice of any claim by Sherman.
Finally, the defendant claims that at the time the fence was installed, § 8.4.1(c) of the Lisbon Zoning Regulations required that fences be installed no closer than five feet from any side property line. The defendant claims at that time Mr. Lanis should have been unable to install a fence because construction on the Winner Ford property blocked the area. The plaintiff later on applied for and obtained a variance. Nevertheless, the defendant claims that since the plaintiff waited without excuse until after the side yard regulations took effect to construct the fence, the fence was in violation of the zoning regulation. Actually, the placement of the fence too close to the CT Page 1832 defendant's property did not specifically and injuriously injure the defendant. Also because the plaintiff subsequently obtained a variance of the setback, the court may certainly grant injunctive relief on this ground. Although improper when it was installed, the fence is now properly installed and the fact that it eventually complied with the regulation does immunize Mr. Lanis from a claim that the fence should be removed because it is an obstruction which interferes with the dealership's prescriptive easement. The court finds that the defendant does not have a prescriptive easement. Accordingly, the court finds that the defendant did not have a prescriptive easement over the property for all of the reasons stated previously in this memorandum.
It is the judgment of the court that the plaintiff recover $960.00 for the additional cost to install a fence because of the delay caused by the defendant.
The court finds in favor of the plaintiff on the counterclaim and finds that the defendant has failed to establish that he had a prescriptive easement on the property.
D. Michael Hurley, Judge Trial Referee